**FITAPELLI & SCHAFFER, LLP**
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: (212) 300-0375

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **EDWIN SUAREZ, CARLOS RIVAS, ESTER JIRON, DRISS SENE, IMMANUEL THORNTON, and PAULA VILLEGAS,** individually and on behalf of all others similarly situated; <br><br> **Plaintiffs,** <br><br> -against- <br><br> **ROSA MEXICANO BRANDS INC.; WEST 62 OPERATING LLC; ROSA MEXICANO USQ LLC; FENIX REST. INC.; ROSA MEXICANO MURRAY LLC; ROSA MEXICANO BOSTON, LLC; ROSA MEXICANO RIVERSIDE LLC; ROSA MEXICANO DC LLC; ROSA MEXICANO CHEVY CHASE MARYLAND LLC; ROSA MEXICANO NATIONAL HARBOR LLC; ROSA MEXICANO ATLANTA LLC; ROSA MEXICANO MIAMI LLC; and ROSA MEXICANO SOUTH BEACH LLC;** <br><br> **Defendants.** | No: 1:16-cv-5464 (GWG) |

### DECLARATION OF BRIAN S. SCHAFFER IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

I, Brian S. Schaffer, declare as follows:

1.      I am a partner at the firm of Fitapelli & Schaffer, LLP ("F&S") in New York,

New York, Plaintiffs' Counsel herein.  F&S is a nationally recognized 7 attorney law firm based

in New York City that represents plaintiffs in a wide variety of employment matters, including

individual and class action litigation involving wage and hour, discrimination, and harassment

1

claims.  F&S has significant experience prosecuting wage and hour class and collective actions.

2.      I am one of the lawyers primarily responsible for prosecuting Plaintiffs' claims.

3.      I make these statements based on personal knowledge and would so testify if called as a witness at trial.

## PROCEDURAL HISTORY

### Overview of Investigation and Commencement of Action

4.      Before initiating the instant action, F&S conducted a thorough investigation into Defendants' business locations and ownership, which included research into their wage and hour policies and/or practices, factual and legal research into the underlying merits of Plaintiffs' claims and possible defenses, factual and legal research as to the proper measure of damages, and the likelihood of collective and class action certification.

5.      Furthermore, F&S conducted an in-depth interview with Driss Sene who worked at the Rosa Mexicano restaurant located at 155 Seaport Boulevard, Boston, MA 02210 ("Massachusetts Rosa Mexicano").  This interview helped F&S determine the hours that servers, server assistants, bussers, runners, drink runners, coffee bar employees, cocktail servers, bartenders, service bartenders, barbacks, and other similar tipped employees ("collectively, "Tipped Workers") were working, the wages they were paid, the nature of their duties, and Defendants' tip sharing practices.  Specifically, F&S discovered that Defendants required Tipped Workers at the Massachusetts Rosa Mexicano to share a portion of their tips with "Floaters," employees that in F&S' opinion, were not eligible to receive tips.  F&S continued its investigation by speaking with other former Tipped Workers in other Rosa Mexicano restaurants, including those in New York, and determined that class treatment of this matter was appropriate.

6.      On April 7, 2016, Plaintiff sent a demand letter to Defendants to engage in pre-

litigation settlement discussions.  The demand letter alleged claims under the Fair Labor Standards Act ("FLSA") and Massachusetts Wage and Hour Laws ("MA Wage Laws") regarding owed minimum and overtime wages.  The demand letter also indicated that Plaintiff was seeking to bring this action on behalf of not only Massachusetts Tipped Workers, but also as a FLSA collective for all other Rosa Mexicano restaurants other than those located in California and Minnesota.

7.      On April 13, 2016, the parties executed a class-wide tolling agreement whereby the statute of limitations would not run as to any class members.  This allowed the parties to commence discussions regarding the claims and defenses at hand.

8.      F&S continued its investigation into Defendants, including the sending of FOIA and FOIL requests to the United States and New York Department of Labor, the New York State Liquor Authority, and speaking with current and past Tipped Workers regarding their employment with Defendants.

9.      As part of its continuous investigation, F&S held additional in-depth interviews with Edwin Suarez, Carlos Rivas, and Ester Jiron, former Tipped Workers at the Rosa Mexicano restaurant located at 61 Columbus Avenue at 62nd Street, New York, New York 10023 ("Columbus Circle Rosa Mexicano").  These interviews helped F&S confirm how New York Tipped Workers were paid, the nature of their duties, the tip sharing practices in place, the nature of Floaters' duties, and other relevant information.

10.     On July 8, 2016, Plaintiffs Suarez, Rivas, Jiron, and Sene commenced a class and collective action on behalf of themselves and all other similarly situated Tipped Workers employed or previously employed by Rosa Mexicano nationwide, with the exception of Rosa Mexicano restaurants located in California and Minnesota, against the restaurants' alleged parent

and individual corporate entities.[1]

11.     The action asserted that Defendants violated the FLSA, the New York Labor Law ("NYLL"), and the MA Wage Laws with regards to minimum wages and overtime compensation.  *See* ECF No. 1.  Moreover, the action asserted additional violations for New York Tipped Workers with regards to "call-in" pay, failure to provide proper annual wage notices, and failure to provide accurate wage statements under the NYLL.  *Id.*

12.     Specifically with respect to the minimum and overtime wage claims, Plaintiffs alleged that, in part, Defendants failed to satisfy the requirements by which they could avail themselves of a tip credit under the FLSA, NYLL, and MA Wage Laws by requiring Tipped Workers to share a portion of their tips with non-tip eligible employees known as "Floaters" and failing to provide proper notice of claiming the tip credit.  *Id.*  With respect to the tip misappropriation claim, Plaintiffs alleged that Defendants impermissibly allocated a portion of the mandatory tip share to Floaters – tip-ineligible employees who did not have interaction with customers.  *Id.*  With regards to the overtime claim, Plaintiffs alleged that they failed to factor in alleged automatic gratuities into Tipped Workers' regular rate of pay for the purposes of overtime compensation.  *Id.*

13.     Through stipulation, Defendants filed their Answer to the Complaint on October 7, 2016, denying the allegations and asserting various affirmative defenses.  *See* ECF No. 41.

14.     On November 16, 2016, the Parties informed the Court that they had agreed to attend class-wide mediation in this matter.  ECF No. 43.  The Parties scheduled a private mediation for February 3, 2017 before mediator Martin F. Scheinman, Esq.  Due to an

---

[1] These corporations are as follows:  Rosa Mexicano Brands Inc.; West 62 Operating LLC; Rosa Mexicano USQ LLC; Fenix Rest. Inc.; Rosa Mexicano Murray LLC; Rosa Mexicano Boston, LLC; Rosa Mexicano Riverside LLC; Rosa Mexicano DC LLC; Rosa Mexicano Chevy Chase Maryland LLC; Rosa Mexicano National Harbor LLC; Rosa Mexicano Atlanta LLC; Rosa Mexicano Miami LLC; and Rosa Mexicano South Beach LLC (collectively, "Defendants").

unforeseen scheduling issue, Defendants required an adjournment of this original mediation date. As a result, the Parties rescheduled the class-wide mediation for May 17, 2017 before Mr. Scheinman.

15.     Prior to mediation, 6 additional individuals filed opt-in consent forms to join this action.  *See* ECF Nos. 17, 36, 37, 45.   These opt-ins joining were a direct result of outreach by the named Plaintiffs as well as F&S's outreach, website, and blog posts.  Before opting in any of the above Plaintiffs, F&S conducted in-depth interviews with these individuals regarding the claims asserted in the Complaint and received and reviewed their documents.

16.     Plaintiff Paula Villegas, who opted into the lawsuit on January 5, 2017, had performed work for Defendants at the Rosa Mexicano located at 1111 Lincoln Road, Miami Beach, Florida 33139 ("South Beach Rosa Mexicano"). ECF No. 45. Plaintiff Villegas confirmed that many of the alleged violations in the Complaint occurred at the South Beach Rosa Mexicano, including tipping out Floaters.

17.     On February 14, 2017, the Parties consented to jurisdiction by Magistrate Judge Ronald L. Ellis.  *See* ECF No. 48.

**Pre-Mediation Discovery**

18.     The Parties worked together over several months to exchange relevant documents necessary to prepare for and attend class-wide mediation on May 17, 2017 subject to the Parties' Stipulated Protective Order Regarding Use and Disclosure of Confidential Information.  ECF No. 34.  In this regard, the Parties participated in numerous phone calls and sent countless e-mails back and forth regarding the data Plaintiffs required to prepare for mediation.

19.      Defendants produced thousands of relevant documents, including, but not limited to, sample handbooks, wage notices, wage statements, time records, tip sheets, and employee

personnel files and punch detail for the named and opt-in Plaintiffs, and the full payroll records for all Tipped Workers in the putative classes.   Specifically, Plaintiffs received data and documents for the 12 Rosa Mexicano restaurants covered by the lawsuit:

- 61 Columbus Avenue at 62nd Street, New York, New York 10023 ("Columbus Center Rosa Mexicano"),

- 9 East 18th Street, New York, New York 10003 ("Union Square Rosa Mexicano"),

- 1063 1st Avenue at 58th Street, New York, New York 10022 ("First Avenue Rosa Mexicano"),

- 41 Murray Street, New York, New York 10007 ("TriBeCa Rosa Mexicano"),

- 155 Seaport Boulevard, Boston, Massachusetts 02210 ("Massachusetts Rosa Mexicano")

- 60 Riverside Square Mall, Hackensack, New Jersey 07601 ("Hackensack Rosa Mexicano"),

- 575 7th Street at F Street NW, Washington, D.C. 20004 ("Washington, D.C. Rosa Mexicano"),

- 5225 Wisconsin Avenue NM, Washington, DC 20015 ("Chevy Chase Rosa Mexicano"),

- 153 Waterfront Street, National Harbor, Maryland 20745 ("National Harbor Rosa Mexicano"),

- 245 18th Street NW, Atlanta, Georgia 30363 ("Atlanta Rosa Mexicano"),

- 900 South Miami Avenue, Miami, Florida 33130 ("Miami Rosa Mexicano"), and

- 111 Lincoln Road, Miami Beach, Florida 33139 ("South Beach Rosa Mexicano").

20.     As part of the pre-mediation discovery process, F&S utilized Defendants' production to evaluate Plaintiffs' claims and Defendants' defenses.  Upon review of the tip sheets used at the Rosa Mexicano restaurants, F&S was able to determine that Defendants distributed a portion of Tipped Workers' tips to Floaters when Floaters were assigned to shifts at the restaurants.  However, the documentation also showed that not all restaurants had the position of Floater, or in the alternative, only had the Floater position for a finite period of time or certain shifts in the relevant time period.  A review of these documents also revealed that Tipped Workers in New York were allegedly not provided accurate statements of wages with each payment of wages, as the wage statements provided failed to indicate the tip credit taken by Defendants.

21.     F&S used Defendants' payroll records to calculate class-wide damages governing all restaurant locations by creating several spreadsheets.  Specifically, F&S created spreadsheets to calculate damages on a state-by-state basis, due to differences in state laws regarding liability, liquidated damages and minimum wages, and utilized a master spreadsheet to calculate total damages.  Plaintiffs' damages calculations also tracked key changes in the applicable federal and New York wage and hour laws, such as the change in the NYLL's liquidated damages statute in April 2011.  F&S also determined the workweeks worked by each New York Tipped Worker to determine the damages authorized by the NYLL § 195 for failure to provide proper annual wage notices and accurate wage statements.

22.     Upon completion, F&S checked and then re-checked the damages spreadsheets for accuracy, such as reviewing the formulas for errors, ensuring the links between spreadsheets were active, ensuring that any updates in spreadsheets were reflected in the final damages spreadsheet, and reviewing the raw data to ensure it was entered correctly.

**The Parties' Mediation**

23.     Prior to the mediation, the parties submitted detailed mediation statements with exhibits to Martin F. Scheinman, Esq., an experienced employment law mediator.

24.     F&S's mediation statement was 16 pages long and included several exhibits, including selected key documents from Defendants' production and documents from F&S's investigation into Defendants.  Plaintiffs' mediation statement also contained a detailed analysis of the facts at issue and utilized the most recent case law to support each of Plaintiffs' claims.

25.     The parties appeared for a private mediation before Martin F. Scheinman on May 17, 2017 at the law office of Fox Rothschild LLP, counsel for the Defendants.  At the mediation, Defendants argued, among other things, that Plaintiffs and other Tipped Workers were paid the correct wages for several reasons.  In this regard, Defendants argued that Floaters, to the extent the position existed at certain restaurants, had sufficient customer interaction to be tip-eligible. Defendants also argued that in instances where there was no Floater on duty, the other Tipped Workers would not have provided the Floater any share of tips, meaning that Tipped Workers would not have suffered any injury.  Defendants also argued that the Floater position did not exist at all of the restaurants, and even in some restaurants, the position had been eliminated in the relevant time period.  Defendants also argued that the vast majority of the Tipped Workers would be unaffected by the existence (if any) of the Floater, because the "tip share" system in place at the restaurants resulted in only the servers tipping out the Floaters.  Defendants also argued that their handbook gave proper § 203(m) tip credit notice under the FLSA, and that pay notices given to New York workers complied with NYCRR 146-2.2, NYLL § 195(1), and FLSA § 203(m).

26.     After a full day of negotiations, the Parties reached a settlement in principal for

Three Million Six Hundred Thousand Dollars ($3,600,000).  **Ex. A**, Settlement Agreement ¶¶ 3.1.  The Parties executed a confidential Memorandum of Understanding on May 17, 2017.

27.     As part of the Parties' agreement, Plaintiffs amended their Complaint on July 24, 2017.  ECF No. 57.  The First Amended Complaint added Paula Villegas and Immanuel Thornton, who filed an opt-in form on May 19, 2017 (ECF No. 56), as named Plaintiffs, added an additional claim for "Reporting Pay" under the MA Wage Laws, and added Maryland Wage and Hour Claims against Defendants.  ECF No. 57.

28.     On August 4, 2017, the Parties fully executed the Settlement Agreement attached hereto as **Exhibit A**.

<u>**SETTLEMENT AGREEMENT**</u>

29.     The up to $3,600,000 settlement amount (the "Settlement Fund") is a compromise figure.

30.     In reaching the settlement, F&S took into account the risks of establishing liability and class and collective certification, and considered the time, delay, and financial repercussions in the event of trial and appeal by Defendants.

31.     Although Plaintiffs believe their claims have merit, they recognize the legal, factual, and procedural obstacles to recovery, as Defendants have and will continue to vigorously contest Plaintiffs' claims and their ability to satisfy a judgment if the action does not settle.  In light of the strengths and weaknesses of the case, F&S believes the settlement easily falls within the range of reasonableness because it achieves a significant benefit for Plaintiffs and Class Members in the face of several obstacles.

32.     The settlement negotiations were at all times hard fought and at arm's-length, and have produced a result that F&S believes to be in the best interests of the class in light of the

costs and risks of continued litigation.  Moreover, in our estimation, and based on the data provided by Plaintiffs and Defendants, the settlement represents a significant percentage of the recovery that Plaintiffs and Class Members would have achieved had they prevailed on all of their claims and survived an appeal, and a substantial portion of what Defendants would be able to pay if faced with a judgment.[2]  On August 25, 2017, Plaintiffs submitted a supplemental letter to United States Magistrate Judge Ronald L. Ellis discussing in detail Plaintiffs' claims, the risks associated with these claims, and an overview of the mediation process that resulted in this settlement figure.  This letter is attached hereto as **Ex. B** ("Aug. 25, 2017 Suppl. Ltr.").

33.     The Settlement Agreement identifies two groups included in the proposed settlement: "FRCP 23 Class Members" and "FLSA Class Members" (collectively "Class Members").

34.     FRCP 23 Class Members are defined as persons who worked as a "server, server assistant, busser, runner, drink runner, coffee bar employee, cocktail server, bartender, service bartender and/or barback" at one of the Rosa Mexicano Restaurants in: 1) New York between April 7, 2010 and May 17, 2017, or 2) in Massachusetts or Maryland between April 7, 2013 and May 17, 2017.  **Ex. A**, Settlement Agreement ¶¶ 1.8, 1.10, 1.18, 1.19, 1.20, 1.21.

35.     FLSA Class Members are defined as persons who worked as a "server, server assistant, busser, runner, drink runner, coffee bar employee, cocktail server, bartender, service bartender and/or barback" at one of the Rosa Mexicano Restaurants in New Jersey, Washington, D.C, Georgia, or Florida between April 7, 2013 and May 17, 2017.  *Id.* ¶ 1.17.

---

[2] By obtaining up to $3,600,000, Plaintiffs recovered approximately 37.28% of their maximum alleged damages of $9,656,602 (not including liquidated damages or WTPA penalties).

## ALLOCATION FORMULA

36.    Participating Claimants shall be entitled to receive a proportionate share of the Net Settlement Fund allocated below to the Class Members in the Class(es) they are members of:

      a.    NY FRCP 23 Class Members:  $1,190,000 of the Gross Settlement Fund ("NY Allocation").

      b.    MA FRCP 23 Class Members:  $290,000 of the Gross Settlement Fund ("MA Allocation").

      c.    MD FRCP 23 Class Members:  $185,000 of the Gross Settlement Fund ("MD Allocation").

      d.    FLSA Class Members: $595,000 of the Gross Settlement Fund.  ("FLSA Allocation," and with the NY Allocation, MA Allocation, and MD Allocation, the "Allocations").

      e.    Reserve Fund:  $40,000 of the Gross Settlement Fund shall be set aside from the Settlement Fund to cover errors and omissions.

*Id.* ¶ 3.5(B).

37.    The difference in monetary allocation for subclasses depends on the strength and types of claims that can be brought by Plaintiffs.  For example, in New York, Plaintiffs are able to recover 6 years of owed wages, as compared to 3 years under the FLSA, Massachusetts, and Maryland law.  Additionally, New York has four (4) Rosa Mexicano restaurants, all but one of them opened for the entire 6 year statute of limitations period.  Moreover, the NYLL provides additional claims under NYLL §§ 195(1), 195(3), and 196-d.

38.    A Participating Claimant's proportionate share of the Allocations above shall be determined by the Claims Administrator pursuant to the following formula:

      a.    All  Class Members shall receive 1 point per week for every week worked in a Covered Position in any Rosa Mexicano restaurant in each Allocation's applicable statute of limitations, as follows:

          i.   New York:  April 7, 2010 through May 17, 2017.

11

      ii. All other states:  April 7, 2013 through May 17, 2017.

      iii. Opt-in Plaintiffs shall receive one (1) extra point for each week worked during their Class Periods.

  b. To calculate each Class Member's proportionate share of the Allocations:

      i. Add all points for all Class Members, including but not limited to any points that would have been given to individuals who timely opt-out of the Settlement, within each of the Classes together to obtain the "Total Denominator" for each of the Classes;

      ii. Divide the number of points for each Class Members awarded in each Class by the Total Denominator for each Class to obtain each Class Member's "portion of the allocated Settlement Fund" in each Class;

      iii. Multiply each Class Member's portion of the allocated Settlement Fund in each Class by the allocated Net Settlement Fund for each of those classes, and then combine all such amounts together, in order to determine each Class Member's "Individual Settlement Amount."

*Id.* ¶ 3.5(C).

## PRELIMINARY APPROVAL AND NOTICE TO CLASS MEMBERS

39.    This matter was originally assigned to the Hon. Ronald L. Ellis.  As a result of Judge Ellis' retirement, the Honorable Gabriel W. Gorenstein was assigned to this matter on September 26, 2017.

40.    The Court granted Plaintiffs' Preliminary Approval Motion on November 15, 2017, directed that the Notices be sent to Class Members, and set March 26, 2018 as the original date for a Fairness Hearing.  ECF No. 72, attached as **Ex. C**.  On December 19, 2017, the Court granted the Parties' joint request to reschedule the Fairness Hearing, and reset the Fairness Hearing to April 12, 2018.  ECF No. 74.  Class Counsel adjusted the Class and Collective Notices with the Court's November 15, 2017 redline order.  ECF No. 71.

41.    On January 8, 2018, the claims administrator sent the Court-approved Notice of

Proposed Class Action Settlement ("Class Notice") and Court-approved Notice of Proposed
Collective Action Settlement ("Collective Notice") (together with the Class Notice, "the
Notices") by first-class mail to 2577 Class Members. **Ex. D**, Declaration of Michael E. Olney
("Olney Decl.") ¶ 8.  The Class and Collective Notices informed Class Members of the terms of
the settlement, as well of their right to submit a claim, opt out from the Settlement, object to the
Settlement, or do nothing, and the implications of each such action. *Id.* ¶ 5.  The Notices also
advised Class Members of applicable deadlines and other events, such as the Final Approval
Hearing, and how Class Members could obtain additional information. *Id.*  A sample of the
Class and Collective Notices are attached as **Exhibits 1** and **2** to the Olney Declaration. *Id.* The
Notices also informed Class Members of Named Plaintiffs' requests for service awards, as well
as Class Counsel's intention to seek one-third of the settlement fund for attorneys' fees and costs.
*Id.*

42.     Prior to the mailing of the Notices, Class Counsel remained in constant contact
with the claims administrator, as well as counsel for the Defendants, to ensure the accuracy of
the Class List, confirming Class Members' dates of employment, updating addresses received
from Class Members, and confirming the accuracy of the Individual Settlement Award
calculations. *Id.* ¶ 8.

43.     The deadline for Class Members to participate by returning a signed claim form
was March 9, 2018.  *Id.* ¶ 8.  The deadline to opt-out or object for FRCP Class Members was
March 9, 2018.  *Id.*

44.     No Class Members opted out of the Settlement. *Id.* ¶ 14.

45.     No Class Members objected to the Settlement. *Id.* ¶ 15.

46.     Since the mailing of the Notices, Class Counsel has met with Class Members in

person to answer questions regarding the settlement, and received phone calls from over 240 Class Members who have reacted positively to the settlement terms.  Class Counsel also assisted Class Members to receive and sign claim forms by holding in person meetings at their office, and also sending electronic notice and claim forms via AdobeSign for Class Members' review and signature.   In this regard, Class Counsel submitted 60 completed claim forms to claim administrator, and also submitted 109 updated addresses for Class Members.  *Id.* ¶ 12.  Class Counsel also performed regular audits that cross referenced Class Members to whom replacement forms were sent with weekly updated status reports, which included lists of received claim forms.  Leading up to the deadline for Class Members to return a claim form, Class Counsel followed up with Class Members who received a replacement claim form and had not yet returned it.

47.     During the Notice Period, Class Counsel also discovered 2 Class Members who were inadvertently not included in the original class list, and 1 Class Member whose dates of employments did not include all of her credible time.  Class Counsel brought this to the attention of Defendants and the claim administrator, which resulted in their inclusion in the Class and the individual receiving full credit for her dates of employment.  *Id.*

48.     The average individual settlement award is estimated to be $1,524.72 and the maximum individual award is estimated to be $13,618.32.  *Id.* ¶ 17.  1,124 Class Members returned claim forms, thereby claiming $1,715,335.20 or 74.58% of the net settlement fund.  *Id.* ¶¶ 16-17.

## SERVICE AWARDS

49.     Pursuant to the Settlement Agreement, and subject to Court approval, service awards totaling $50,000.00 will be given to the Named Plaintiffs in addition to their

individualized awards under the allocation formula, in recognition of the services they rendered on behalf of the Class. **Ex. A**, Settlement Agreement ¶ 3.4(A). The Named Plaintiffs' service awards will be allocated as follows: Edwin Suarez ($10,000.00) Carlos Rivas ($10,000.00), Ester Jiron ($10,000.00), Driss Sene ($10,000), Immanuel Thornton ($2,500.00), and Paula Villegas ($7,500.00).

50.      The Named Plaintiffs were instrumental to the initiation and prosecution of this action, and expended considerable time and effort to assist Class Counsel with this case. Their services included, but were not limited to: informing counsel of the facts initially and as the case progressed; providing counsel with relevant documents in their possession; encouraging other individuals to participate in the action and settlement; assisting Class Counsel in reviewing Defendants' document production; assisting counsel to prepare for mediation; participating telephonically at the mediation, and reviewing and commenting on the terms of the settlement.

51.      Since the mailing of Notice, Plaintiffs have been in contact with current and former coworkers informing them to contact Class Counsel to update their addresses and ensure their membership in the Class.

52.      The Named Plaintiffs also undertook a significant risk that they would be retaliated against by Defendants and/or "black balled" in the industry for the sake of the Class, as their names and information in this lawsuit are readily available through simple internet and Google searches. In addition, the Named Plaintiffs were identified in newspaper articles, including Law 360 and other publications, thereby increasing this risk. Moreover, Plaintiff Villegas is a current employee, and has been very fearful of retaliation and losing her job and livelihood. As a result, the Named Plaintiffs took substantial risks in prosecuting the action.

53.      Class Counsel asks for these service awards because as a result of their actions,

Defendants have changed the policies at issue.   In this regard, Plaintiff Villegas, a current employee at Defendants' Miami Beach restaurant, reports that Defendants have removed any Floaters from the tip share.  Moreover, counsel for Defendants confirms that Floaters no longer receive tips at Defendants' other restaurants.

54.      Additionally, the Named Plaintiffs' actions resulted in 5 additional individuals opting into this action before any court-authorized notice or mailing of the Settlement Notices.

55.      The Class and Collective Notices informed Class Members the amount to be paid as service awards to the Named Plaintiffs, in recognition of the services they provided to the Class. **Ex. D**, Olney Decl., **Ex. 1** Class Notice at 2; **Ex. 2** Collective Notice at 2.  No Class Member objected to the service awards, **Ex. D**, Olney Decl. ¶ 15, and the Named Plaintiffs have no conflict with any Class Member.

## ATTORNEYS' FEES & EXPENSES

56.      Pursuant to the Settlement Agreement, Class Counsel requests attorneys' fees and costs equal to one-third of the Settlement Fund, or $1,200,000.00.  **Ex. A**, Settlement Agreement ¶ 3.2(A); **Ex. D**, Olney Decl., **Ex. 1** Class Notice at 2; **Ex. 2** Collective Notice at 2.   Class Counsel is not seeking an award of costs separate from their request for one-third of the Settlement Fund.  *Id.*

57.      The Notices informed Class Members that Class Counsel will apply to the Court for attorneys' fees and costs in the amount of $1,200,000 (one-third of the Settlement Fund).  **Ex. D**, Olney Decl., **Ex. 1** Class Notice at 2; **Ex. 2** Collective Notice at 2.  No Class Member has objected to Class Counsel's request for attorneys' fees and costs.  **Ex. D**, Olney Decl. ¶ 15.

58.      Class Counsel's request for one-third of the fund, or $1,200,000 is 4.62 times their current lodestar of $259,590.00.

**Firm Background and Experience**

59.     F&S has significant experience prosecuting wage and hour cases such as this one and has obtained settlements in excess of $100 million for workers.  F&S has prosecuted wage and hour cases in federal court that have been certified as class and collective actions with F&S being appointed class counsel, including:  *Sanchez v. Bentzys Construction, Inc. et al*., No. 16 Civ. 07072 (E.D.N.Y. Sept. 19, 2017); *Alverson v. BL Restaurant Operations LLC*, No. 16 Civ. 00849 (OLG) (RBF), 2017 WL 5491998 (W.D.T.X. Nov. 11, 2017); *Hotaranu v. Star Nissan Inc.*, *et al*, No. 16 Civ. 5320 (KAM) (RML), 2017 WL 1390808 (E.D.N.Y. April 12, 2017);  *Crosby et al. v. Lasership, Inc.*, No. 15 Civ. 08694 (GWG), ECF No. 171 (S.D.N.Y. June 30, 2017) (Gorenstein, J.); *Almonte v. Marina Ice Cream Corp.*, No. 16 Civ. 00660 (GBD), 2016 WL 7217258 (S.D.N.Y. Dec. 8, 2016); *Illoldi v. Koi NY LLC*, No. 1:15 Civ. 06838 (VEC), 2016 WL 5900218 (S.D.N.Y. Oct. 7, 2016); *Hadel et al. v. Gaucho*, No. 15 Civ. 3706 (RLE), 2016 WL 3647600 (S.D.N.Y. June 30, 2016); *Chhab et al v. Darden Restaurants Inc.*, No. 11 Civ. 08345 (NRB), 2016 WL 3004511 (S.D.N.Y. May 20, 2016); *Karic v. The Major Automotive Companies, Inc.*, No. 09 Civ. 5708 (CLP), 2016 WL 1745037 (S.D.N.Y. April 27, 2016); *Gonqueh v. Leros Point to Point, Inc.*, 14 Civ. 5883 (GHW), 2016 WL 791295 (S.D.N.Y. Feb. 26, 2016); *Bravo v. Palm W. Corp.*, No. 14 Civ. 9193 (SN), 2015 WL 5826715 (S.D.N.Y. Sept. 30, 2015); *Long v. HSBC USA Inc.*, No. 14 Civ. 6233 (HBP), 2015 WL 5444651 (S.D.N.Y. Sept. 11, 2015); *Carpenter v. Paige Hospitality Group, LLC*, No. 13 Civ. 4009 (GBD), 2015 U.S. Dist. LEXIS 82771 (S.D.N.Y. June 2, 2015); *Hamadou v. Hess Corporation*, No. 12 Civ. 250 (JLC), 2015 WL 3824230 (S.D.N.Y. June 18, 2015); *Espinoza v. Wanrong Trading Corp.*, No. 13 Civ. 1727 (FB), ECF No. 33 (E.D.N.Y. December 23, 2014); *Flynn v. N.Y. Dolls Gentlemen's Club*, No. 13 Civ. 6530 (PKC)(RLE), 2014 WL 4980380 (S.D.N.Y. Apr. 28, 2015); *Flores v. One Hanover, LLC*, No. 13 Civ.

5184 (AJP), ECF No. 40 (S.D.N.Y. June 9, 2014); *Simsek v. New York State Catholic Health Plan, Inc.*, No. 11 Civ. 5393 (FB)(JMA), 2014 U.S. Dist. LEXIS 22979 (E.D.N.Y. Feb. 14, 2014); *Diombera v. The Riese Organization, Inc.*, No. 12 Civ. 8477 (RJS)(HP), ECF No. 73 (S.D.N.Y. Oct. 21, 2013); *Sukhnandan v. Royal Health Care of Long Island LLC*, No. 12 Civ. 4216 (WHP)(RLE), 2013 WL 4734818 (S.D.N.Y. Sept. 3, 2013); *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693 (PGG), 2013 WL 5492998 (S.D.N.Y. Oct. 2, 2013); *Tiro v. Pub. House Investments, LLC*, No. 11 Civ. 7679 (CM), 2013 WL 4830949 (S.D.N.Y. Sept. 10, 2013); *Chang v. BD Stanhope, LLC*, No. 10 Civ. 8577 (TPG), ECF No. 48 (S.D.N.Y. Nov. 15, 2012); *Girault v. Supersol 661 Amsterdam, LLC*, No. 11 Civ. 6835 (PAE), 2012 WL 4748101 (S.D.N.Y. Oct. 4, 2012); *Lovaglio v. W & E Hospitality Inc.*, No. 10 Civ. 7351 (LLS), 2012 WL 2775019 (S.D.N.Y. July 6, 2012); *Matheson v. The Glazier Group, Inc.*, No. 09 Civ. 4212 (DAB), 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011); *O'Dell. v. AMF Bowling Centers, Inc.*, No. 09 Civ. 759 (DLC), 2009 WL 6583142 (S.D.N.Y. Sept. 18, 2009).

60.     I received a *Juris Doctor* degree (dean's list) from New York Law School in 2003. I was admitted to the bar of the State of New York in 2004, and am also admitted to the bars of the Second Circuit Court of Appeals and the United States District Courts for the Southern, Eastern, Northern, and Western Districts of New York. I am a member in good standing of each of these bars. I became a partner of F&S in January 2008. Prior to starting F&S, I was employed by The Law Firm of Louis Ginsberg, P.C., a firm that specializes in the representation of individuals in employment law. Thereafter, I was employed by two civil litigation firms in Manhattan, Freiberg & Peck, LLP and Weiner, Millo & Morgan, LLC. Since starting F&S in 2008, I have exclusively represented plaintiffs in employment litigation and other employee rights matters. I have successfully argued cases in the New York State Appellate Division. I am a member of the National Employment Lawyers Association ("NELA"), NELA's

New York Chapter, the New York County Lawyer's Association ("NYCLA"), and the American Bar Association ("ABA"). I have served as a panelist at CLE presentations for wage and hour issues for NELA, NYCLA, American Conference Institute (ACI) and Lawline. I have frequently been contacted by the media and the press to discuss current employment law related issues, and was a contributing editor to the ABA's 2015 and 2018 FLSA treatises. In addition, I was recently nominated to be on NELA's wage & hour committee due to my reputation within the plaintiff's bar. My firm filed only 6 FLSA cases in the Southern District of New York in 2017, as compared to the 822 FLSA cases filed in 2017. **Ex. G**.

61.      Joseph A. Fitapelli graduated *cum laude* from Saint Francis College in 1998 and received a *Juris Doctor* from New York Law School in 2001. Mr. Fitapelli is licensed to practice law in the State of New York and is admitted in the Eastern, Southern, and Western Districts of New York, as well as the Second Circuit Court of Appeals. Mr. Fitapelli is a member in good standing of each of these bars. Mr. Fitapelli became a partner of F&S in January 2008. Prior to starting F&S, Mr. Fitapelli was employed by Abrams, Gorelick, Friedman & Jacobson, P.C., and Weiner, Millo & Morgan, LLC, two well-respected civil litigation firms in Manhattan. Since starting F&S in 2008, Mr. Fitapelli has exclusively represented plaintiffs in employment litigation and other employee rights matters. Mr. Fitapelli has successfully argued cases in the New York State Appellate Division, First and Second Departments. Mr. Fitapelli is an active member of the National Employment Lawyers Association ("NELA") and its New York affiliate, and has been featured in Crain's Business Weekly on the future of FLSA litigation in the restaurant industry. Mr. Fitapelli serves as lead or co-lead counsel on a number of national class and collective actions, and have been a panelist at various CLE events held by the American Bar Association, the New York County Lawyers' Association and NELA.

62.     Armando A. Ortiz has been employed at F&S since May 2015 as an associate attorney.  Mr. Ortiz graduated from Boston College in 2009 and received his J.D. from Suffolk University Law School in 2012, *cum laude*.  While in law school, Mr. Ortiz was a member of the Journal of High Technology Law, and served as a judicial intern to the Honorable Robert Tochka in the Massachusetts state court system.  Mr. Ortiz was admitted to practice in the State of New York in 2015, and is also admitted to practice in the states of Massachusetts (2012) and Florida (2013). Prior to joining F&S, Mr. Ortiz practiced wage & hour law at a boutique plaintiff's firm in Miami, Florida.  He is also admitted in the United States District Court for the Southern, Eastern, and Northern Districts of New York, the District of Massachusetts, and the Southern and Middle Districts of Florida.  Mr. Ortiz is a member of NELA and NELA's New York Chapter.

63.     Nicholas P. Melito has been employed at F&S since January 2012 as an extern (2012 to May 2012), law clerk (June 2012 to February 2014), and associate (March 2014 to present).  Mr. Melito graduated from Molloy College in 2007 and New York Law School in 2013. While in Law School, Mr. Melito was a member of the Center for Business and Financial Services Law, and the Labor and Employment Law Society.  Mr. Melito is also a member of NELA's New York Chapter.  Mr. Melito is licensed to practice law in the State of New York, and the Southern and Eastern Districts of New York.

64.     Dana M. Cimera has been employed at F&S since September 2016 as an associate attorney.  Ms. Cimera graduated from Rutgers Business School-New Brunswick in 2013, and New York Law School in 2016.  While in Law School, Ms. Cimera interned at the New York County Civil Court under Honorable Gerald Lebovits, and received New York Law School's Public Service Certificate - recognizing her commitment to working in the public interest.  Ms.

Cimera is also a member of NELA's New York Chapter.  Ms. Cimera is licensed to practice law in the State of New York, the State of New Jersey, the Southern and Eastern District Courts of New York, and the District Court of New Jersey.

65.     Jeffrey Dorfman was employed at F&S as a law clerk (2012 to 2014) and an associate (2015 to 2017).  Mr. Dorfman graduated from The Ohio State University in 2011 and the Maurice A. Deane School of Law at Hofstra University in 2014.  While in Law School, Mr. Dorfman was a member of the American College of Trust and Estate Counsel Law Journal.  Mr. Dorfman is also a member of NELA's New York Chapter.  Mr. Dorfman is licensed to practice law in the State of New York and the Southern and Eastern Districts of New York.

66.     Vanessa Simet has been employed at F&S since May 2014 as an administrative assistant (May 2014 to December 2015) and paralegal (December 2015 to present). Ms. Simet currently attends New York University in pursuit of her B.S.N.

67.     Nicole D'Apice has been employed at F&S since November 2016 as an administrative assistant.  Ms. D'Apice graduated from College of Staten Island in June 2016 with a B.A. in Geography.

68.      Mayreni Heredia has been employed at F&S since January 2018 as a law clerk. Ms. Heredia currently attends Brooklyn Law School, and is currently a 2L student.  Ms. Heredia graduated from Ithaca College in May 2014 with a B.A. in Legal Studies.

69.     Plaintiffs' Counsel's skill and experience were directly responsible for bringing about the positive settlement and weigh in favor of granting the requested fees.

70.     Based on Plaintiffs' Counsel's extensive experience in precisely this type of litigation and our familiarity with the factual and legal issues in this case, we have reached the firm conclusion that the proposed settlement is clearly in the best interests of the Named Plaintiffs, Opt-

In Plaintiffs and the Classes.

**Time Spent on the Litigation**

71.     As of the filing of the instant motion, Plaintiffs' Counsel has spent 634.8 hours litigating and settling this case, which includes approximately 593.8 attorney hours, and 41 paralegal and law clerk hours.  Throughout the litigation, Class Counsel has been available to clients around the clock via phone and email. The hours reported are reasonable for a case of this complexity and magnitude and were compiled from contemporaneous time records maintained by each attorney participating in the case.  F&S keeps contemporaneous billing records for all matters, and the contemporaneous billing records for this matter are attached hereto as **Ex. E.**

72.     Due to the experience of its attorneys in representing workers in litigation of this type, Plaintiffs' Counsel utilizes a small team of attorneys and support personnel to minimize duplication of efforts and maximize both efficiency and billing judgment.

73.     Plaintiffs' Counsel ordinarily and regularly bills legal time on an hourly fee basis, based upon each attorney's standard hourly rate. Currently, Plaintiffs' Counsel's hourly rates range from $550 per partner hour, $225 to $400 per associate's hour, $150 per paralegal's hour, and $100 per administrative assistant's hour.  Plaintiffs' Counsel's clients regularly accept and pay these hourly rates.

74.     Since 2014, all of F&S's cases have been taken on pure contingency, including all of Plaintiffs' Counsel's out of pocket costs and expenses.  Thus, when Plaintiffs' Counsel's lawyers spend time on contingency matters, they do so at a significant risk for the firm. Plaintiffs' Counsel frequently turns away cases, including hourly matters.  For example, as of November 13, 2014, the date of the last hourly matter undertook by the firm, the partner rate for Mr. Schaffer was billed to clients at $500.00 per hour.  **Ex. P**.

75.     Below are charts summarizing the specific attorneys, their hourly rates, and their total time worked on this matter, in addition to the total paralegal time.

| FITAPELLI & SCHAFFER, LLP | | | |
|---|---|---|---|
| **INDIVIDUAL, POSITION** | **HOURLY RATE** | **TOTAL HOURS** | **FEES** |
| Brian S. Schaffer, Partner | $550 | 220.0 | $121,000.00 |
| Joseph A. Fitapelli, Partner | $550 | 15.6 | $8,580.00 |
| Armando A. Ortiz, Associate | $350 | 345.4 | $120,890.00 |
| Nicholas P. Melito, Associate | $300 | 2.9 | $870.00 |
| Dana M. Cimera, Associate | $225 | 8.1 | $1,822.5 |
| Jeffrey Dorfman, Associate | $275 | 1.8 | $495.00 |
| Vanessa Simet, Paralegal | $150 | 34.8 | $5,220.00 |
| Mayreni Herenia, Law Clerk | $150 | 3.7 | $462.50 |
| Nicole D'Apice, Admin. Asst | $100 | 2.5 | $250.00 |
| **TOTAL** | | **634.8** | **$259,590.00** |

*See* **Ex. E**, generally.

76.     In my experience, administering class and/or collective settlements of this nature and size requires a substantial and ongoing commitment, and the requested attorneys' fees are not based solely on time and effort already expended, they are also meant to compensate Plaintiffs' Counsel for time that we will be required to spend administering the settlement in the future.  For example, Plaintiffs' Counsel anticipates spending additional time with respect to preparation for the Fairness Hearing, and administering the settlement.

77.     In Plaintiffs' Counsel's experience, law firms that represent plaintiffs in employment matters typically charge their clients at least one-third of their gross recoveries when they represent them on a contingency basis.

**Risks of Litigation**

78.     Plaintiffs' Counsel undertook to prosecute this action without any assurance of payment for their services, litigating this case on a wholly contingent basis in the face of

tremendous risk.  The retainer agreement signed by Named Plaintiff reflects this.  Large-scale wage and hour cases of this type are, by their very nature, complicated and time-consuming. Attorneys undertaking representation of large numbers of affected employees in wage and hour actions inevitably must be prepared to make a tremendous investment of time, energy, and resources. Due also to the contingent nature of the customary fee arrangement, attorneys are asked to be prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  For example, in *Benavidez v. Plaza Mexico, Inc.*, No. 09 Civ. 5076 (KNF) (S.D.N.Y.) and *Paez v. Plaza Mexico, Inc.*, No. 09 Civ. 9574 (KNF) (S.D.N.Y.) defendants filed bankruptcy after extensive discovery and motion practice.  Even after the court entered a judgment against the defendants in excess of $5,000,000.00 after a trial on damages, neither the plaintiffs nor F&S have collected any money in connection with both those cases. In *Matheson v. T-Bone Restaurant, LLC a/k/a Strip House New York*, No. 1:09-cv-04214 (DAB) (S.D.N.Y.), at the time of the plaintiffs' final approval motion regarding class settlement, F&S' lodestar was negative 1.43.  During the subsequent three years, F&S has expended further time and resources in collecting the settlement payment; to date, the defendants remain in default as they still owe $123,574.64 out of $495,000.

79.    As an example showing the risks of proceeding to trial, in *Rios et al. v. Louya Corp. et al.*, No. 1:14-cv-06800 (GHW) (S.D.N.Y.), F&S obtained a verdict of $1,044,512.62 on behalf seven restaurant workers after a week-long bench trial.  However, due to the defendants' bankruptcy filings, it is unlikely that the plaintiffs or F&S will recover any significant money in that case.  The above three examples highlight the risks associated with settlement and obtaining a judgment after trial.  Unfortunately, F&S has also recovered zero or has had a negative lodestar in other cases as well.

80.     As an example showing the resources required for and risks associated with taking a hybrid class/collective case to the decertification and Rule 23 class certification stage, in *Scott v. Chipotle Mexican Grill, Inc.* No. 12 Civ. 8333 (ALC)(SN) (S.D.N.Y.), Class Counsel and their co-counsel took or defended approximately 100 depositions and formally responded to written discovery for more plaintiffs.  Moreover, after five years of litigation and substantial discovery, the *Scott* plaintiffs' collective of over 500 employees was decertified and simultaneously the plaintiffs were denied class certification.  *See* No. 12 Civ. 8333 (ALC)(SN), 2017 WL 1287512, at *1 (S.D.N.Y. Mar. 29, 2017).  As a result, plaintiffs appeal and litigation of the matter will continue for the foreseeable future.

81.     As an example showing the risks of continued litigation to the summary judgment stage, in *Martin et al. v. Sprint United Management Co., et al.*, No 15 Civ. 05237 (PAE), ECF No. 322 (S.D.N.Y. Sept. 27, 2017), Judge Engelmayer granted the defendants' Motion for Summary Judgment, resulting in a full dismissal of the plaintiffs' individual and collective wage and hour claims.

82.     As can be seen from the examples above, Plaintiffs' Counsel stood to gain nothing in the event the case was unsuccessful.

83.     Additionally, in F&S's experience, restaurant wage and hour cases are inherently high-risk due to often unexpected closings and collection issues, notwithstanding a restaurant's reputation or established years of business.  For example, Artisanal Bistro, Koi-SoHo, and other high end restaurants operating in Manhattan that F&S previously sued for similar wage issues have closed within the last 2 years, despite their location, size, and prestige.

84.     To date, Class Counsel has worked without compensation of any kind, and the fee has been wholly contingent upon the result achieved.  Class Counsel continues to take on

difficult cases like this one because we believe that they are important as many individual workers may be unwilling or unable to front the costs of litigation for an outcome that is uncertain.

**Litigation Costs and Expenses**

85.     Class Counsel also incurred the following out-of-pocket expenses prosecuting the litigation as part of its request for one-third of the settlement fund, which were incidental and necessary to the representation of the Classes:

| FITAPELLI & SCHAFFER LLP | |
|---|---|
| Filing Fee | $400.00 |
| Mediation Fee | $6,634.38 |
| FedEx Mailings | $240.98 |
| Investigation Costs | $213.36 |
| Transportation & Misc. Expenses | $39.72 |
| **TOTAL** | **$7,528.44** |

*See* **Ex. F.**

*        *        *

## EXHIBITS

86.     Attached as **Exhibit A** is a true and correct copy of the parties' Settlement Agreement, which was fully executed by the parties on August 4, 2017.

87.     Attached as **Exhibit B** is a true and correct copy of Plaintiffs' Supplemental Letter to the Court dated August 25, 2017 (ECF No. 64).

88.     Attached as **Exhibit C** is a true and correct copy of the Order granting Plaintiffs' Motion for Preliminary Approval of Class Action Settlement in *Suarez et al. v. Rosa Brands Inc. et al.*, No. 16 Civ. 05464 (GWG), ECF No. 72 (S.D.N.Y. Nov. 15, 2017) (Gorenstein, J.).

89.     Attached as **Exhibit D** is a true and correct copy of the Declaration of Michael E. Olney, dated March 28, 2018, attaching true and correct copies of the Class and Collective Notices sent to Class Members on January 8, 2018.

90.     Attached as **Exhibit E** is a true and correct copy of F&S' contemporaneous billing records in this matter.

91.     Attached as **Exhibit F** is a true and correct copy of F&S' summary of expenses in this matter.

92.     Attached as **Exhibit G** is a true and correct copy of Fair Labor Standards Act Lawsuit Statistics: Trac Reports (*available at* http://trac.syr.edu/tracreports/civil/498/) (last accessed March 26, 2018).

93.     Attached as **Exhibit H** is a true and correct copy of the Order granting final approval in the case of *Vivaldo et al. v. United Talmudical Academy of Kiryas Joel, Inc. et al.*, No. 14 Civ. 02636 (GWG), ECF No. 128 (S.D.N.Y. Feb. 9, 2018) (Gorenstein, J.).

94.     Attached as **Exhibit I** is a true and correct copy of excerpts from the transcript from the final fairness hearing in the matter of *Hadel et al. v. Gaucho LLC et al.*, No. 15 Civ. 3706 (RLE) (S.D.N.Y. June 30, 2016).

95.     Attached as **Exhibit J** is a true and correct copy of the transcript from the final fairness hearing in the matter of *Illoldi et al. v. Koi Group Inc. et al.*, No. 15 Civ. 6838 (VEC) (S.D.N.Y. Oct. 7, 2016).

96.     Attached as **Exhibit K** is a true and correct copy of the Order granting final approval in the case of *Crosby et al. v. Lasership, Inc. et al.*, No. 15 Civ. 08694 (GWG), ECF No. 171 (S.D.N.Y. June 30, 2017) (Gorenstein, J.).

97.     Attached as **Exhibit L** is a true and correct copy of excerpts from the transcript from the final fairness hearing in the matter of *Amador v. Morgan Stanley & Co., LLC*, No. 11 Civ. 4326 (RJS) (S.D.N.Y. Dec. 19, 2014).

98.     Attached as **Exhibit M** is a true and correct copy of excerpts from the transcript from the final fairness hearing in the matter of *Puglisi v. TD Bank, N.A.*, No. 14 Civ. 02740 (AT) (GWG), 2015 WL 4608655, hr'g tr. at p. 10-12 (E.D.N.Y. July 30, 2015).

99.     Attached as **Exhibit N** is a true and correct copy of the Order granting final approval in the case of *Sanchez v. Kambousi Restaurant Partners, LLC, et al.*, No. 15 Civ. 05880 (CM), ECF No. 38 (S.D.N.Y. Sept. 14, 2016).

100.    Attached as **Exhibit O** is a true and correct copy of excerpts from the transcript from the final fairness hearing in the matter of *Pena v. LeCirque, Inc.*, 14 Civ. 7541 (FM), hr'g tr. at pg. 7-8 (S.D.N.Y. Jan. 21, 2016).

101.    Attached as **Exhibit P** is a true and correct copy of the retainer between Fitapelli & Schaffer, LLP and a former client, dated November 13, 2014.

102.    Attached as **Exhibit Q** is a true and correct copy of Plaintiffs' proposed Order granting Plaintiffs' Motion for Final Approval of Settlement.


Dated:  New York, New York
        March 29, 2018

                                        Respectfully submitted,

                                        /s/ Brian S. Schaffer
                                        Brian S. Schaffer

                                        **FITAPELLI & SCHAFFER, LLP**
                                        Brian S. Schaffer
                                        Armando A. Ortiz
                                        28 Liberty Street, 30th Floor
                                        New York, New York 10005
                                        Telephone: (212) 300-0375

                                        *Attorneys for Plaintiffs and*
                                        *the Class*