# EXHIBIT A

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWIN SUAREZ, CARLOS RIVAS, ESTER JIRON, DRISS SENE, IMMANUEL THORNTON, and PAULA VILLEGAS, individually and on behalf of all others similarly situated;<br><br>Plaintiffs,<br><br>-against-<br><br>ROSA MEXICANO BRANDS INC.; WEST 62 OPERATING LLC; ROSA MEXICANO USQ LLC; FENIX REST. INC.; ROSA MEXICANO MURRAY LLC; ROSA MEXICANO BOSTON, LLC; ROSA MEXICANO RIVERSIDE LLC; ROSA MEXICANO DC LLC; ROSA MEXICANO CHEVY CHASE MARYLAND LLC; ROSA MEXICANO NATIONAL HARBOR LLC; ROSA MEXICANO ATLANTA LLC; ROSA MEXICANO MIAMI LLC; and ROSA MEXICANO SOUTH BEACH LLC;<br><br>Defendants. | No: 1:16-cv-05464 (RLE) |

## JOINT STIPULATION OF SETTLEMENT AND RELEASE

This Joint Stipulation of Settlement and Release (the "Agreement" or "Settlement") is entered into by and among Edwin Suarez, Carlos Rivas, Ester Jiron, Driss Sene, Immanuel Thornton, and Paula Villegas, on their behalf and on behalf of any and all of their past, present and future representatives, heirs, administrators, executors, beneficiaries, agents, spouses, children, trustees, conservators, attorneys, successors and assigns of such individuals, as applicable and without limitation (collectively "Plaintiffs"), and the Class, as defined below, and Rosa Mexicano Brands Inc.; West 62 Operating LLC; Rosa Mexicano USQ LLC; Fenix Rest. Inc.; Rosa Mexicano Murray LLC; Rosa Mexicano Boston, LLC; Rosa Mexicano Riverside LLC; Rosa Mexicano DC LLC; Rosa Mexicano Chevy Chase Maryland LLC; Rosa Mexicano National Harbor LLC; Rosa Mexicano Atlanta LLC; Rosa Mexicano Miami LLC; and Rosa Mexicano South Beach LLC, (collectively "Defendants," and together with Plaintiffs, the "Parties") in settlement of a civil proceeding styled *Suarez et al. v. Rosa Mexicano Brands Inc. et al.*, pending in the United States District Court, Southern District of New York, Case No. 16 Civ. 05464 (RLE).

1

## RECITALS

**WHEREAS**, on July 8, 2016, Plaintiffs Edwin Suarez, Carlos Rivas, Ester Jiron and Driss Sene, on their behalf and on behalf of the Class, filed a Complaint against Defendants alleging violations of the federal Fair Labor Standards Act ("FLSA"), the New York Labor Law ("NYLL"), and Massachusetts Wage Laws ("MA Wage Laws") for the alleged failure to pay certain wage amounts, and alleged failure to provide appropriate notices and pay statements;

**WHEREAS**, Defendants filed their Answer to the Complaint on October 7, 2016 denying the allegations and asserting various affirmative defenses;

**WHEREAS**, the Parties engaged in significant informal discovery in advance of a mediation pursuant to and subject to the Stipulated Protective Order Regarding Use and Disclosure of Confidential Information entered into by the Parties and "So Ordered" by the Court (*see* ECF No. 34.), including but not limited to the production of payroll data for all restaurants asserted in the complaint, as well as samples of the following documents from throughout the relevant time period; rate of pay notices (in Spanish and English); wage statements; tip out sheets; time punches; and employee handbook provisions related to wage and hour practices (in Spanish and English); as well as other requested documents sought by Plaintiffs;

**WHEREAS**, on May 17, 2017, the Parties participated in a private mediation before Martin F. Scheinman, Esq.

**WHEREAS**, at the May 17, 2017 mediation session, after a full day of extensive negotiations, the Parties reached a settlement and executed a Confidential Settlement Terms Sheet;

**WHEREAS**, on July 24, 2017, as part of the Parties' settlement, Plaintiffs Suarez, Rivas, Jiron and Sene, on their own behalf and on behalf of the Class, filed a First Amended Complaint adding Immanuel Thornton and Paula Villegas as named Plaintiffs. The First Amended Complaint expanded the matter to include Maryland wage and hour class claims against the Rosa Mexicano restaurant located in National Harbor, Maryland;

**WHEREAS**, based upon their analysis of a number of factors, including the risk of litigation and the possibility that litigation would not be resolved for several years or might not result in any recovery whatsoever, the Plaintiffs are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Class;

**WHEREAS**, without admitting or conceding that class and collective action certification is warranted, without acknowledging or conceding any wrongdoing, liability or damages whatsoever, and without admitting that any pay (including minimum wage, overtime pay and gratuities) or notices were not properly made or given, Defendants agreed to this settlement on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of litigation;

2

**NOW, THEREFORE,** in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Litigation, as defined below, on the following terms and conditions:

## 1.    DEFINITIONS

The defined terms set forth herein shall have the meanings ascribed to them below.

1.1     **Agreement.** "Agreement" means this Joint Stipulation of Settlement and Release.

1.2     **Claims Administrator.** The "Claims Administrator" will be Arden Claims Service, which was selected by the Parties.

1.3     **Class Counsel; Plaintiffs' Counsel.** "Class Counsel" or "Plaintiffs' Counsel" means Fitapelli & Schaffer, LLP. For purposes of providing any notices required under this Agreement, Class Counsel shall be Brian S. Schaffer and Armando A. Ortiz of Fitapelli & Schaffer, LLP.

1.4     **FRCP Rule 23 Notice and Claim Form.** "FRCP Rule 23 Notice and Claim Form" means the form attached hereto as **Exhibit A**, that shall be mailed to NY, MA, and MD FRCP Rule 23 Class Members. FRCP Rule 23 Class Members must timely submit the Claim Form in order to become a Participating Claimant and recover a payment pursuant to Section 3.5. The Claim Form provided to FRCP Rule 23 Class Members shall state that, by signing and returning the Claim Form, the Class Member affirmatively consents to opt into the Lawsuit, pursuant to 29 U.S.C. § 216.

1.5     **FLSA Notice and Claim Form.** "FLSA Notice and Claim Form" means the form attached hereto as **Exhibit B** that shall be mailed to FLSA Class Members. FLSA Class Members must timely submit the Claim Form in order to become a Participating Claimant and recover a payment pursuant to Section 3.5. The Claim Form provided to FLSA Class Members shall state that, by signing and returning the Claim Form, the FLSA Class Member affirmatively consents to opt into the Lawsuit, pursuant to 29 U.S.C. § 216.

1.6     **Claim Form Deadline.** "Claim Form Deadline" means the date sixty (60) days after the Notices are initially mailed to the Class Members. No more than thirty (30) days after the initial mailing (*i.e.* - thirty (30) days before the deadline to submit claims), the Claims Administrator shall send a reminder postcard to all Class Members who have not submitted and returned a Claim Form or opt-out request. No more than forty-five (45) days after the initial mailing (*i.e.* – fifteen (15) days before the deadline to submit claims), the Claims Administrator shall send a second reminder postcard to all Class Members who have not submitted and returned a Claim Form or opt-out request.

1.7     **Class Members.** "Class Members" are the FLSA Class Members and the NY FRCP 23 Class Members, MA FRCP 23 Class Members, and MD FRCP 23 Class Members. All Opt-in Plaintiffs and Representative Plaintiffs have affirmatively agreed to this settlement, shall automatically be deemed Class Members, and may not opt-out of this

3

settlement. Collectively, the Class Members are referred to herein as the "Class." The parties estimate that the maximum number of Class Members will not exceed approximately 3,500.

1.8 **Class Periods.** "Class Periods" means each of the relevant limitations periods at issue in the Litigation in each of the relevant jurisdictions in the Litigation, as follows:

    (A) **Florida Class Period.** April 7, 2013 through May 17, 2017.

    (B) **Georgia Class Period.** April 7, 2013 through May 17, 2017.

    (C) **Maryland Class Period.** April 7, 2013 through May 17, 2017.

    (D) **Massachusetts Class Period.** April 7, 2013 through May 17, 2017.

    (E) **New Jersey Class Period.** April 7, 2013 through May 17, 2017.

    (F) **New York Class Period.** April 7, 2010 through May 17, 2017.

    (G) **Washington, D.C. Class Period.** April 7, 2013 through May 17, 2017.

1.9 **Court.** "Court" means the United States District Court for the Southern District of New York.

1.10 **Covered Positions.** "Covered Positions" refers to servers, server assistants, bussers, runners, drink runners, coffee bar employees, cocktail servers, bartenders, service bartenders, and barbacks who are or were employed by Rosa Mexicano during the applicable Class Periods as defined above. The Covered Positions do not include floaters and delivery workers.

1.11 **Defendants.** "Defendants" shall be defined as set forth in the introductory paragraph of this Agreement.

1.12 **Defendants' Counsel.** "Defendants' Counsel" means Fox Rothschild LLP. For the purposes of providing any notices required under this Agreement, Defendants' Counsel shall be Carolyn D. Richmond and Alexander W. Leonard of Fox Rothschild LLP.

1.13 **Effective Date.** "Effective Date" shall be the last of the following dates:

    (A) Thirty (30) days after the Court grants final approval of the settlement if no appeal form the Court's appeal is served or filed; or

    (B) If there is an appeal of the Court's final approval of the settlement , the day after all appeals are resolved in favor of final approval in a form substantially identical to the form of the Final Approval Order entered by the Court.

1.14 **Employer Payroll Taxes.** "Employer Payroll Taxes" means all payroll taxes an employer is typically required to pay arising out of or based upon the payment of

4

compensation payable as wages by IRS Form W-2 under the Agreement, including FICA, FUTA, and SUTA obligations. Defendants are responsible for paying employer payroll taxes separate from the Gross Settlement Amount.

**1.15  Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Final Approval Motion.

**1.16  Final Approval Order.** "Final Approval Order" or "Final Approval" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement and the releases, distribution of the Settlement Checks and Service Payments, and Dismissal of the Litigation, with prejudice.

**1.17  FLSA Class Members.** "FLSA Class Members" means all individuals who were employed in the Covered Positions in any Rosa Mexicano restaurant located in New Jersey, Washington, D.C., Georgia, and Florida at any time during the period from April 7, 2013 through and including May 17, 2017. The FLSA Class Members shall be collectively referred to herein as the "FLSA Class."

**1.18  FRCP 23 Class Members.** "FRCP 23 Class Members" shall mean all NY FRCP 23 Class Members, MA FRCP 23 Class Members, and MD FRCP 23 Class Members, collectively. The FRCP 23 Class Members shall be collectively referred to herein as the "FRCP 23 Classes."

**1.19  MA FRCP 23 Class Members.** "MA FRCP 23 Class Members" means all individuals who were employed in the Covered Positions in any Rosa Mexicano restaurant in Massachusetts at any time during the period from April 7, 2013 through and including May 17, 2017. The MA FRCP 23 Class Members shall be collectively referred to herein as the "MA FRCP 23 Class."

**1.20  MD FRCP 23 Class Members.** "MD FRCP 23 Class Members" means all individuals who were employed in the Covered Positions in any Rosa Mexicano restaurant in Maryland at any time during the period from April 7, 2013 through and including May 17, 2017. The MD FRCP 23 Class Members shall be collectively referred to herein as the "MD FRCP 23 Class."

**1.21  NY FRCP 23 Class Members.** "NY FRCP 23 Class Members" means all individuals who were employed in the Covered Positions in any Rosa Mexicano restaurant in New York at any time during the period from April 7, 2010 through and including May 17, 2017. The NY FRCP 23 Class Members shall be collectively referred to herein as the "NY FRCP 23 Class."

**1.22  Gross Settlement Amount.** The "Gross Settlement Amount" shall mean the maximum monetary obligation of Defendants under this settlement, which is Three Million Six Hundred Thousand Dollars and Zero Cents ($3,600,000) (excluding any employer-side payroll taxes typically borne by the employer with respect to any settlement payments made) that Defendants have agreed to pay to settle the Lawsuit and in order to obtain the releases from Plaintiffs as set forth in this Agreement. Rosa Mexicano's settlement payment will be dependent on the court issuing a Final Approval Order that will, among

other things: (a) approve this Agreement as fair, adequate and reasonable; (b) dismiss this Action with prejudice; and (c) incorporate the terms of the agreed-upon releases. Rosa Mexicano will not have any monetary obligation if the court does not approve the settlement and the releases with respect to Plaintiffs. If the final number of Class Members is materially greater than 3,500, Defendants will negotiate in good faith with Plaintiffs regarding potentially providing additional consideration into the Gross Settlement Amount on a pro rata basis to cover the additional claims.

1.23    **Individual Settlement Award.** The "Individual Settlement Award" is the portion of the Net Settlement Fund attributable to each Class Member based on the allocation formula for workweeks in a Covered Position during the relevant Class Period(s) as described in Section 3.5 herein. Workweeks shall be calculated using Defendants' business records.

1.24    **Litigation.** "Litigation," "Action," or "Lawsuit" means the litigation described in the "WHEREAS" paragraphs above styled *Suarez et al. v. Rosa Mexicano Brands Inc. et al.*, pending in the United States District Court, Southern District of New York, Case No. 16 Civ. 05464 (RLE).

1.25    **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) the Claims Administrator's fees and costs; (2) Court-approved attorneys' fees and costs for Class Counsel; (3) Court-approved Service Payments, as described in Section 3.4 below; (4) any other costs, expenses, fees or other distributions associated with the settlement, and (5) the Reserve Fund.

1.26    **Notice or Notices.** "Notice" or "Notices" means the Court-approved FRCP Rule 23 Notice and Claim Form and the FLSA Notice and Claim Form.

1.27    **Objector.** "Objector" means an individual who files a valid and timely objection pursuant to the terms of this Agreement, and does not include any individual who opts in or opts out of the Settlement pursuant to this Agreement.

1.28    **Opt-in Plaintiffs.** "Opt-in Plaintiffs" means Marquis Henderson, Michael Sanchez, Nicole Vanessa Vargas, Alfredo De Quesada, and Jose David Lopez, who have already affirmatively opted-into this litigation.

1.29    **Opt-out Statement.** "Opt-out Statement" is a written signed statement that an individual FRCP 23 Class Member has decided to opt out of, and therefore not participate in, the Settlement.

1.30    **Parties.** "Parties," as set forth in the Introduction, shall mean, collectively, Representative Plaintiffs, Opt-in Plaintiffs, FRCP 23 Class Members, FLSA Class Members, and Defendants.

1.31    **Participating Claimant(s) and Participating Claim.**

   (A)    "Participating Claimant" or "Participating Claimants" means each Class Member who has not opted out of the Settlement in accordance with Section 2.7 and who

properly and timely submits a Claim Form by the Claim Form Deadline in accordance with Section 2.6.

(B)     All Representative Plaintiffs and Opt-in Plaintiffs shall be considered Participating Claimants and will not be required to return a Claim Form to be a Participating Claimant and may not opt-out of the Settlement.

1.32   **Plaintiffs.** "Plaintiffs" shall mean Representative Plaintiffs, Opt-in Plaintiffs, FRCP 23 Class Members, and FLSA Class Members.

1.33   **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Claims Administrator for the Settlement Amount paid by Defendants. The QSF will be controlled by the Claims Administrator subject to the terms of this Agreement and the Court's Preliminary Approval Order and Final Approval Order, and will be placed in a fully-insured, interest-bearing account with a reputable and credit-worthy federally chartered bank. Interest, if any, earned on the QSF will become part of the Gross Settlement Amount.

1.34   **Representative Plaintiffs.** "Representative Plaintiffs" means Edwin Suarez, Carlos Rivas, Ester Jiron, Driss Sene, Immanuel Thornton, and Paula Villegas.

1.35   **Reserve Fund.** "Reserve Fund" means Forty Thousand Dollars ($40,000) which is to be set aside from the Gross Settlement Amount to cover errors and omissions, including but not limited to individuals who should have been included in the class list or whose dates of employment were incorrect.

1.36   **Settlement Checks.** "Settlement Checks" mean checks issued to Class Members for their share of the Net Settlement Fund calculated in accordance with this Agreement.

1.37   **Settlement Payment.** "Settlement Payment" means the total amount of all: (i) Individual Settlement Awards for all Participating Claimants, (ii) Court-approved Service Payments to Representative Plaintiffs; (iii) Court-approved attorneys' fees and costs; (iv) Court-approved Claims Administrator's costs, and (v) any other costs, expenses, fees or other distributions associated with the settlement.

2.     **APPROVAL AND CLASS NOTICE**

2.1    **Retention of Claims Administrator.** Within 5 days after the execution of this Agreement, Class Counsel shall retain and appoint the Claims Administrator to administer the settlement process. The Claims Administrator shall be responsible for: (i) preparing, printing and disseminating to Class Members the Notice and all reminder postcards, as defined below; (ii) preparing, printing and disseminating all required CAFA notices; (iii) copying counsel for all Parties on material correspondence and promptly notifying all counsel for the Parties of any material requests or communications made by any Class Member; (iv) receiving, reviewing, and responding to any Opt-Out Statements or any other inquiries submitted by Class Members; (v) furnishing to counsel for the Parties copies of any requests for exclusion, objections or other written or electronic communications from Class Members which the Claims Administrator receives; (vi)

7

keeping track of requests for exclusion, including maintaining the original mailing envelope in which the request was mailed; (vii) keeping track of returned Claim Forms; (viii) calculating distribution amounts to Class Members in accordance with this Agreement; (ix) preparing and mailing the Settlement Checks and any related tax reporting forms to Plaintiffs, Opt-in Plaintiffs, Participating Claimants, Class Counsel, and any other party, entity, or individual for whom receipt of such documents is necessary or required; (x) calculating any employer-side payroll taxes required pursuant to the settlement, (xi) timely responding to inquiries from Class Counsel and Defendants' Counsel consistent with the Administrator's duties specified herein, (xii) promptly apprising Class Counsel and Defense Counsel of the activities of the Administrator and maintaining adequate records of its activities, including the dates of the mailing of Notice(s), returned mail and other communications and attempted written or electronic communications with the Class, (xiii) providing a final report, deliverable to Class Counsel and Defendants' Counsel, detailing the results of the class mailings and participation, and (xiv) such other tasks upon which the Parties mutually agree.  The Parties agree to cooperate with the Claims Administrator and assist it in any way reasonably possible in administering the settlement.  The Claims Administrator's fees shall be paid from the Settlement Payment.

2.2     **Preliminary Approval by the Court.**  Within thirty (30) days of the execution of this Agreement, Plaintiffs will file a Motion for Conditional Certification of the Settlement Class and for Preliminary Approval of the Class Action Settlement ("**Preliminary Approval Motion**"). In connection with the Preliminary Approval Motion, Plaintiffs will seek an Order (among other things): (a) approving as to form and content the proposed Notices, (b) scheduling a final approval hearing on the question of whether the settlement, including payment of attorneys' fees and costs, and the Service Payments, should be finally approved as fair, reasonable and adequate as to the Class Members; (c) directing the mailing of the Notices to the Class members and providing the FRCP 23 Class Members an opportunity to submit a request to be excluded from the settlement; (d) preliminarily approving the settlement, subject only to the objections of FRCP 23 Class Members and final review by the Court.  Plaintiffs will submit the preliminary approval motion, including a proposed preliminary approval order, for Defendants' review, comment, and approval prior to the date of filing.  Subject to their review and approval, Defendants will not oppose the Preliminary Approval Motion.

2.3     **Denial of Preliminary Approval.**  If the Court denies the Motion for Preliminary Approval, then the Parties jointly agree to seek reconsideration of the ruling or will endeavor to renegotiate the settlement, addressing the issues raised by the Court.  Should reconsideration be denied and/or the Parties' attempt to renegotiate the settlement and then secure Court approval of a renegotiated settlement be denied, the parties will return to their positions prior to the settlement and the case will proceed as if no settlement had been attempted.  In such a case, the Parties will negotiate and submit for Court approval a case management schedule.

2.4     **Final Approval Order from the Court.**  Plaintiffs will seek to obtain from the Court, as a condition of settlement, a Final Approval Order approving the settlement ("**Final Approval Motion**").  The proposed Final Order will, among other things: (a) finally

certify the Class for purposes of settlement, (b) approve the settlement as fair, adequate, reasonable, and binding on Plaintiffs including but not limited to all Class Members who have not timely and properly opted out pursuant to Section 2.7 and incorporate the terms of this Joint Stipulation of Settlement and Release, (c) dismiss the Litigation with prejudice, (d) approve all releases provided by the Plaintiffs herein, (e) approve Class Counsel's application for an award of attorneys' fees and costs, and (f) approve the Service Payments in accordance with this Agreement. The Court will retain jurisdiction over the settlement until all payments are made.

(A)     The Parties agree that the stipulation of collective action and class action certification is for settlement purposes only. If, for any reason, the Court does not grant final approval of this Agreement, the stipulation to collective action certification pursuant to 29 U.S.C. § 216(b) and class action certification pursuant to Fed. R. Civ. P. 23 shall be void *ab initio*.

**2.5     Class Notice**

(A)     Within 10 days of the Court's Preliminary Approval Order, Defendants will provide Class Counsel and the Claims Administrator with a list, in electronic form, of the (1) names, (2) last known addresses, (3) location(s) worked, (4) dates of employment and (5) social security numbers of the Class Members, if available, but that such social security numbers shall be contained in a confidential document that the Defendants shall provide to the Claims Administrator only.

(B)     Within thirty (30) days of the Court's Preliminary Approval Order, the Claims Administrator shall mail to all FRCP 23 Class Members, via First Class United States mail, postage prepaid, the appropriate Notice and Claim Form, using each individual's last known address, as recorded in Defendants' records.

(C)     Within thirty (30) days of the Court's Preliminary Approval Order, the Claims Administrator shall mail to all FLSA Class Members who are not also FRCP 23 Class Members, via First Class United States mail, postage prepaid, the Notice and Claim Form, using each individual's last known address, as recorded in Defendants' records.

(D)     No more than thirty (30) days after the initial mailing (*i.e.* - thirty (30) days before the deadline to submit claims), the Claims Administrator shall send a reminder postcard to all Class Members who have not submitted and returned a Claim Form or opt-out request.   No more than forty-five (45) days after the initial mailing (*i.e.* – fifteen (15) days before the deadline to submit claims), the Claims Administrator shall send a second reminder postcard to all Class Members who have not submitted and returned a Claim Form or opt-out request.

(E)     The postcards shall provide, "On {INSERT DATE} you were mailed a notice form identifying rights you may have in connection with a class action settlement entitled *Suarez et al. v. Rosa Mexicano Brands Inc. et al.* You may call Armando

Ortiz a lawyer representing the workers at (212) 300-0375 to request a replacement form.  The deadline to participate in the settlement is {INSERT DATE}.

(F)     The Claims Administrator shall take all reasonable steps to obtain the correct address of any Class Member for whom the notice is returned by the post office as undeliverable, including using social security numbers provided by Defendants to obtain better address information via skip trace or other method, and shall attempt re-mailings. The Claims Administrator will notify Class Counsel and Defendants' Counsel of any Notice sent to a Class Member that is returned as undeliverable after the first mailing, as well as any such Notice returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

**2.6     Participating Claimants**

(A)     Class Members who wish to become Participating Claimants must fully and timely complete, execute and mail, per the instructions therein, the Claim Form enclosed with the Notice.  By executing and mailing the Claim Form, the Participating Claimant shall be "opting in" to the FLSA action pursuant to Section 216(b) of the FLSA.  If the Claim Form is not postmarked on or before the Claim Form Deadline, then that Class Member will be deemed to have forever waived his or her right to be a Participating Claimant and receive payment under this settlement. FRCP 23 Class Members who do not submit the Claim Form and Release in a timely and proper fashion and who fail to properly submit an Opt-Out Statement shall be subject to the Settlement and will release all state and local wage and hour claims against the Releasees. Only Participating Claimants shall be entitled to payment pursuant to the settlement and this Agreement, and will be issued a Settlement Check, which will contain a release of their FLSA and an additional duplicative release of their state and local wage and hour claims. Class Members whose notices were undeliverable, or were unable to file the Claim Form before the Claim Form Deadline due to such factors as documented change of address, military service, hospitalization, or other extraordinary circumstances shall have an additional fifteen (15) days beyond the Claim Form Deadline to file a claim form.

(B)     A FRCP 23 Class Member who submits an Opt Out Statement and also submits a Claim Form shall be sent a cure letter by the Settlement Claims Administrator seeking clarification of whether they intend to opt out of the settlement or become a Participating Claimant.  Absent a response to the contrary, such FRCP 23 Class Member shall be deemed to have opted-out of the settlement pursuant to Section 2.7.

(C)     Representative Plaintiffs will be deemed to have opted into the settlement and will not be required to return a Claim Form and cannot opt-out of the Settlement and will release all claims regardless of whether or not they cash their Settlement Checks.  All Opt-in Plaintiffs will be deemed to have opted into the settlement and will not be required to return a Claim Form and cannot opt-out of the

10

settlement, and will release all FLSA, state, and local wage and hour claims regardless of whether or not they cash their Settlement Checks.

**2.7     NY, MA, and MD FRCP 23 Class Member Opt-Out.**

(A)     Any FRCP 23 Class Member, except for Representative Plaintiffs and Opt-in Plaintiffs, may choose to opt out of the Settlement but must mail via First Class United States Mail, postage prepaid, a written, signed statement to the Claims Administrator that states he or she is opting out of the Settlement and includes his or her name, address, and telephone number, and state, "I opt out of the Rosa Mexicano wage and hour settlement" ("Opt-out Statement"). To be effective, an Opt-out Statement must be postmarked within sixty (60) days from the mailing of the Notice to the Class Member.

(B)     The Claims Administrator shall stamp the postmark date on the original of each Opt-Out Statement that it receives and shall serve a copy of each Statement on Class Counsel and Defendants' Counsel not later than three (3) calendar days after receipt thereof. The Claims Administrator shall retain in its files the stamped originals of all Opt-Out Statements and the original envelopes containing Opt-Out Statements.

(C)     Any Class Member who fails to exclude him/herself from the settlement, pursuant to this Section, or whose Opt-Out Statement does not include all required information, or is untimely, shall be bound by the Settlement and terms of this Agreement and release all their state and/or local wage and hour claims against the Releasees.

**2.8     FRCP 23 Class Members' Objections to Settlement.**

(A)     FRCP 23 Class Members who wish to present objections to the proposed settlement at the Fairness Hearing must first do so in writing. To be considered, such statement must be mailed to the Claims Administrator by a date certain, to be specified on the Notice, which shall be sixty (60) calendar days after the Claims Administrator mails the Notice. To be valid, the statement must contain the name, address and telephone number of the Class Member. It must also contain the words "I object to the settlement in the Rosa Mexicano wage and hour case" and set forth the reasons for the objection. The Claims Administrator shall stamp the date received on the original objection and send a copy of the objection to Class Counsel and Defendants' Counsel not later than three (3) calendar days after receipt thereof. Class Counsel shall file the date-stamped originals of any and all objections with the Clerk of the Court.

(B)     An objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the objector. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits his/her written objections. An objector may withdraw his/her objections at any

11

time.  Any FRCP 23 Class Member who has requested exclusion may not submit objections to the settlement and an objection does not constitute the filing of an Opt-out Statement.

(C)  The Parties may file with the Court written responses to any objections no later than seven (7) calendar days before the Fairness Hearing.

2.9    **Motion for Final Approval.**  Fourteen (14) calendar days prior to the Fairness Hearing, Plaintiffs will submit the Final Approval Motion.  The Fairness Hearing shall be held at the Court's convenience.

2.10   **Entry of Final Approval Order.**  At the Fairness Hearing, the Parties will request that the Court, among other things, (a) finally certify the FRCP 23 Classes for purposes of settlement, (b) approve the settlement as fair, adequate, reasonable, and binding on Plaintiffs, FLSA Class Members and FRCP 23 Class Members that have not timely opted out, (d) order the Claims Administrator to distribute Settlement Checks to the Participating Claimants, including Service Payments to Representative Plaintiffs, if any, as described in this Agreement, (e) approve the payment of attorneys' fees and costs to Class Counsel, (f) approve the payment of fees and costs to the Claims Administrator; (g) dismiss the Litigation with prejudice, (h) enter an order permanently enjoining the Representative Plaintiffs and all Class Members from pursuing and/or seeking to reopen claims that have been released pursuant to this Agreement, (i) incorporate the terms of this Agreement, and (j) retain jurisdiction over the interpretation and implementation of this Agreement, as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

2.11   **Effect of Failure to Grant Final Approval.**  In the event the Court does not enter a Final Approval Order in accordance with this Agreement, or such Final Approval Order does not become Effective as defined herein, or the Court issues an order finally approving the Agreement in a form materially different from this Agreement, the Parties jointly agree to (a) seek reconsideration of the decision denying the Final Approval Motion, or (b) attempt to renegotiate a mutually agreeable settlement to address the issues raised by the Court and seek Court approval of the renegotiated settlement.  In the event any reconsideration is denied, the Parties cannot reach a mutually agreeable settlement, or a mutually agreed upon settlement is not approved, the Parties shall have no further rights or obligations under this Agreement and:

(A)  The Litigation will proceed as if no settlement had been attempted and the Parties will return to their positions prior to the settlement.

(B)  The Claims Administrator will provide notice to Participating Claimants that the Agreement did not receive final approval and that, as a result, no payments will be made to each Participating Claimant under the Agreement.  Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the last address used by the Claims Administrator in mailing the

12

Notice. The Parties will equally share the cost of such notice, and of the prior notices.

**2.12** **Discretionary Termination by Defendants Due to Opt-Outs.** In the event that seven and one-half percent (7.5%) or more of all FRCP 23 Class Members, excluding the Plaintiffs and Opt-in Plaintiffs timely opt out of the Agreement pursuant to Section 2.7, any Defendant may, at their sole discretion, elect to void the Agreement prior to the Fairness Hearing by informing Class Counsel or the Court in writing. If Defendants chose to exercise termination under this section, they will be solely responsible for all costs of the notice informing the Class Members of such termination.

**3.    SETTLEMENT TERMS**

**3.1  SETTLEMENT PAYMENT.**

(A)  Defendants agree to pay up to the Gross Settlement Amount of Three Million Six Hundred Thousand Dollars and Zero Cents ($3,600,000), which shall resolve and satisfy: (a) Court-approved attorneys' fees and costs; (b) all Individual Settlement Amounts to be paid to Participating Claimants; (c) any Court-approved service payments to Representative Plaintiffs; (d) any and all fees and expenses related to the Claims Administrator; and (e) any other costs, expenses, fees or other distributions associated with the settlement. Other than the Employer Payroll Taxes described in Sections 1.14 and 3.6(G) to be paid outside of the settlement, Defendants will not pay more than $3,600,000.

(B)  Defendants shall deposit the Settlement Payment into the Qualified Settlement Fund within thirty (30) calendar days after the Effective Date.

(C)  Within thirty-five (35) calendar days after the Effective Date, the Claims Administrator will distribute the money in the QSF by making the following payments:

(1)  Paying Class Counsel's Court-approved attorneys' fees and costs as described in Section 3.2(A).

(2)  Paying the Claims Administrator's Court-approved fees and costs as described in Section 3.3(A).

(3)  Paying the Court-approved Service Payment to Representative Plaintiffs as described in Section 3.4(A).

(4)  Paying Participating Claimants their portion of the Net Settlement Fund as described in Section 3.5.

**3.2  Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)  Prior to the Fairness Hearing, Class Counsel shall petition the Court for no more than one-third of the Gross Settlement Amount ($1,200,000) as an award of

13

attorneys' fees and costs.  The attorneys' fees are to compensate Class Counsel for all work already performed in the Litigation, and all the work remaining to be performed in documenting the settlement, securing Court approval of the settlement, making sure the settlement is fairly administered and implemented, and obtaining dismissal with prejudice of the Litigation.  The approved attorneys' fees and costs shall be paid from the Gross Settlement Amount.  Defendants will not oppose such application so long as it does not increase Defendants' total monetary obligations under the Settlement.

(B)     The substance of Class Counsel's application for attorneys' fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion.  Any monies under Section 3.2(A) not approved by the Court become part of the Gross Settlement Fund and will be allocated pro-rata to the Class Members.

**3.3   Claims Administrator's Fees and Costs**

(A)     The Claims Administrator's costs and expenses shall be paid out of the settlement. Prior to the Fairness Hearing, Class Counsel shall petition the Court for reimbursement of the reasonable costs and expenses of the Claims Administrator from the Gross Settlement Amount, which shall not exceed Fifty Thousand Dollars ($50,000).  Defendants shall pre-pay Twenty-Five Thousand Dollars ($25,000) to cover the claims administrator's expenses, which shall count toward the Gross Settlement Amount.   Defendants will not oppose such application, so long as it does not increase Defendants' total monetary obligations under the Settlement.  In the event the Court does not enter a Final Approval Order in accordance with this Agreement, or such Final Approval Order does not become Effective as defined herein, or the Court issues an order finally approving the Agreement in a form materially different from this Agreement, the Parties shall equally pay any of the Claims Administrator's costs accruing pursuant to this Agreement.

(B)     The substance of Class Counsel's application for the Claims Administrator's fees and costs is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation.  The outcome of any proceeding related to Class Counsel's application for these fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion.  Any monies not approved by the Court become part of the Gross Settlement Fund and will be reallocated to the Class Members.

**3.4    Service Payment to Representative Plaintiffs.**

(A)    Class Counsel will seek Court Approval for Representative Plaintiffs Edwin Suarez, Carlos Rivas, Ester Jiron, Driss Sene, Paula Villegas, and Immanuel Thornton to receive service payments each to be paid out of the Gross Settlement Amount for services rendered to the Class. Class Counsel will apply for the following "Service Payments": Edwin Suarez ($10,000); Carlos Rivas ($10,000); Ester Jiron ($10,000); Driss Sene ($10,000); Paula Villegas ($7,500); and Immanuel Thornton ($2,500).

(B)    Class Counsel's application for Service Payments is not part of this Agreement and is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the service payments shall not terminate this Agreement or otherwise affect the Court's ruling on the Final Approval Motion. Any monies not approved by the Court become part of the Gross Settlement Fund and will be reallocated to the Participating Claimants. Defendants will not oppose such application so long as it does not increase Defendants' total monetary obligations under the Settlement

**3.5    Distribution to Participating Claimants.**

(A)    Only Participating Claimants will be deemed eligible for a payment hereunder.

(B)    Participating Claimants shall be entitled to receive a proportionate share of the Net Settlement Fund allocated below to the Class Members in the Class(es) they are members of:

(1)    NY FRCP 23 Class Members: $1,190,000 of the Gross Settlement Fund ("NY Allocation").

(2)    MA FRCP 23 Class Members: $290,000 of the Gross Settlement Fund ("MA Allocation").

(3)    MD FRCP 23 Class Members: $185,000 of the Gross Settlement Fund ("MD Allocation").

(4)    FLSA Class Members: $595,000 of the Gross Settlement Fund. ("FLSA Allocation," and with the NY Allocation, MA Allocation, and MD Allocation, the "Allocations").

(5)    Reserve Fund: $40,000 of the Gross Settlement Fund shall be set aside from the Settlement Fund to cover errors and omissions, including but not limited to individuals who should have been included in the Class list or whose dates of employment were incorrect. The reserve fund shall remain open until the check void date.

15

(C)    A Participating Claimant's proportionate share of the Allocations in Section 3.5(B) allocated to the Class(es) they are members of, shall be determined by the Claims Administrator pursuant to the following formula:

(1)    NY FRCP 23 Class Members:  1 point per week for every week worked in a Covered Position in any Rosa Mexicano restaurant in New York between April 7, 2010 through May 17, 2017 under the NY Allocation.

(2)    MA FRCP 23 Class Members:  1 point per week for every week worked in a Covered Position in any Rosa Mexicano restaurant in Massachusetts between April 7, 2013 through May 17, 2017 under the MA Allocation.

(3)    Maryland FRCP 23 Class Members:  1 point per week for every week worked in a Covered Position in any Rosa Mexicano restaurant in Maryland between April 7, 2013 through May 17, 2017 under the MD Allocation.

(4)    FLSA Class Members:  1 point per week for every week worked in a Covered Position in any Rosa Mexicano restaurant in Florida, New Jersey, Georgia, and/or Washington, D.C. between April 7, 2013 through May 17, 2017 under the FLSA Allocation.

(5)    Opt-in Plaintiffs shall receive one (1) extra point for each week worked during their Class Periods.

(6)    To calculate each Class Member's proportionate share of the Allocations:

(i)    Add all points for all Class Members, including but not limited to any points that would have been given to individuals who timely opt-out of the Settlement, within each of the Classes together to obtain the "Total Denominator" for each of the Classes;

(ii)    Divide the number of points for each Class Members awarded in each Class by the Total Denominator for each Class to obtain each Class Member's "portion of the allocated Settlement Fund" in each Class.

(iii)    Multiply each Class Member's portion of the allocated Settlement Fund in each Class by the allocated Net Settlement Fund for each of those classes, and then combine all such amounts together, in order to determine each Class Member's "Individual Settlement Amount."

(D)    The calculation of all workweeks pursuant to this Section shall be based on Defendants' business records.  The Claims Administrator's calculations regarding Participating Claimants' proportionate shares of the Net Settlement Fund will be final and binding.

16

(E)     Nothing herein shall be construed as prohibiting Defendants from remitting the entire Settlement Payment, in whole or in part, prior to the Final Effective Date without penalty.

(F)     Defendants and the Claims Administrator shall exchange such information as is reasonably necessary for the Claims Administrator to make proper tax withholdings and comply with all tax reporting obligations.

(G)     The Claims Administrator shall mail to all Participating Claimants their Individual Settlement Amounts, and any Service Payment to Representative Plaintiffs, within thirty-five (35) calendar days of the Effective Date.

(H)     Participating Claimants will have one hundred twenty (120) calendar days after their check date to redeem their Individual Settlement Amounts and any Service Payment. If Participating Claimants and Representative Plaintiffs do not redeem their Individual Settlement Amounts and Service Payment within the 120 day period, their checks will be void. If a Participating Claimant or a Plaintiff alerts the Claims Administrator or Class Counsel during the 120-day period to redeem Individual Settlement Amounts or any Service Payment that he or she has not received his or her check or to request a replacement check, the Claims Administrator will, upon confirming that the check in question has not been redeemed, issue a stop payment on the original check and reissue that Participating Claimant's or Plaintiff's check. All reissued checks will be valid for forty-five (45) calendar days after the date of issue and will be void thereafter. Requests for replacement checks after one hundred twenty (120) calendar days of the check's issue date will not be honored.

(I)     Participating Claimants who do not cash their Settlement Checks and/or do not request a replacement check within ninety (90) calendar days of mailing will be sent a reminder postcard by the Claims Administrator.

(J)     The Claims Administrator will cause any uncashed Settlement Checks to revert to Defendants one hundred thirty (130) days after the date a settlement check was sent. The Claims Administrator will cause any remaining monies in the Reserve Fund, QSF, or any other unclaimed monies to revert to Defendants one hundred thirty (130) days after the first settlement checks are sent. This Section is a material provision of this Agreement and not severable from the remainder of this Agreement.

## 3.6     Taxability of Settlement Payments

(A)     Twenty-five percent (25%) of the payments from the Net Settlement Fund pursuant to Section 3.5 to the Participating Claimants shall be treated as back wages and seventy-five (75%) of the payments from the Net Settlement Fund pursuant to Section 3.5 to the Participating Claimants shall be treated as non-wage liquidated damages, penalties and prejudgment interest.

17

(B)     Payments treated as back wages pursuant to Section 3.6(A) shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on an IRS Form W-2.

(C)     Payments treated as liquidated damages, penalties and prejudgment interest pursuant to Section 3.6(A) shall be made without withholding and shall be reported to the IRS and the payee, to the extent required by law, under the payee's name and social security number or Tax Payer Identification number on an IRS Form 1099.

(D)     Payments of attorneys' fees and costs pursuant to Section 3.2(A) shall be made without withholding. Class Counsel will receive a Form 1099 for this payment.

(E)     Payment of the Claims Administrator's fees and costs pursuant to Section 3.3(A) shall be made without withholding. The Claims Administrator will receive a Form 1099 for this payment.

(F)     Service Payments to the Representative Plaintiffs pursuant to Section 3.4(A) shall not be deemed to be wages and will be made without withholding and reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099.

(G)     Defendants shall be responsible for any and all applicable Employer Payroll Tax,, such as Defendants' share of the FICA tax and any federal and state unemployment tax due, with respect to the amounts treated as wages pursuant to Section 3.6(A). Any such payroll taxes ordinarily borne by the employer shall be paid by Defendants in addition to the Settlement Payment, and shall not be paid out of the Settlement Payment. The employee portion of all applicable payroll taxes shall not be Defendants' responsibility. Any tax responsibility for the non-wage portions of the payments under this Agreement shall not be Defendants' responsibility.

(H)     The Representative Plaintiffs and Participating Claimants' acknowledge and agree that they are solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement (other than the portion of employer taxes specified in Section 3.6(G)). The Representative Plaintiffs and Participating Claimants acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement under federal, state and local laws and tax codes and regulations but are relying on their own judgment and advice of their own counsel in this matter.

(I)     It is Defendants' intention that all payments provided under this Agreement are excepted from or comply with Section 409A of the Internal Revenue Code of 1986, as amended, (the "Code") as amounts paid as bona fide legal settlements

under Treasury Regulation Section 1.409A-1(b)(11), and this Agreement shall be interpreted, administered and operated accordingly. Notwithstanding anything to the contrary herein, Defendants do not guarantee the tax treatment of any payments or benefits under this Agreement, including without limitation under the Code, federal, state, local or foreign tax laws and regulations.

(J)   Each Representative Plaintiff and Participating Claimant acknowledges that the Claims Administrator must report to the Internal Revenue Service (as well as state and local taxing authorities, where applicable) all payments made pursuant to this Agreement, and that all such payments will be reported via IRS Form 1099 and Form W-2, as set forth in this Agreement. The Representative Plaintiffs and each Participating Claimant expressly acknowledge and warrant that they are, and shall be, responsible for all federal, state, and local tax liabilities which are attributable to them that may result from the payments under this Agreement, and the Plaintiffs and each Participating Claimant hereby warrants that Defendants shall bear no responsibility for any such tax liabilities, except for the employers' payroll tax contributions (such as FICA) for which Defendants may be liable. The Representative Plaintiffs and Participating Claimants further agree to indemnify and hold Defendants harmless to the full extent of any such liabilities, payments or costs, including taxes, interest, penalties, and attorneys' fees which may be assessed against or incurred by Defendants in connection with any payment made to or on behalf of any Plaintiff and Participating Claimant hereunder. The Representative Plaintiffs and each Participating Claimant agree that should any tax liability arise or accrue to any Plaintiff and/or Participating Claimant under local, state, or federal tax law as a result of any payments made under this Agreement, the Representative Plaintiffs and/or Participating Claimant will pay any and all such finally determined obligations without seeking indemnity or reimbursement from Defendants, or any increase in Service Payments, or his or her Individual Settlement Amount, or in the Gross Settlement Amount.

(K)   With respect to payments received pursuant to this Agreement that are characterized as attorneys' fees and/or costs, Class Counsel assumes responsibility of any and all federal, state and local taxes or contributions which may hereafter be imposed or required to be paid under any federal, state, or local law of any kind.  As such, although the Parties believe, in good faith, that the tax treatment of all payments set forth in this Agreement are proper and in compliance with applicable IRS regulations, if, notwithstanding such belief, the Internal Revenue Service or any other federal, state or local government, administrative agency or court determines that Class Counsel is liable for any federal, state or local taxes or contributions with respect to any payment received pursuant to this settlement that is characterized as attorneys' fees and/or costs, Class Counsel shall be responsible for said payments and shall hold Defendants harmless for said payments.

19

**3.7**    **Release and Consents to Join**

(A)    **Release of New York State Wage and Hour Claims by NY FRCP 23 Class Members.**    All NY FRCP 23 Class Members who do not opt out of the Settlement and all Representative Plaintiffs and Opt-in Plaintiffs fully release and discharge Defendants and their respective past and present restaurants, affiliates and related entities, subsidiaries (including but not limited to any grandchild entities, great grandchild entities, and so on), parents (including but not limited to any grandparent entities, great grandparent entities, and so on), divisions, shareholders, members, predecessors, successors, and assigns, and each of its or their past and present officers, directors, trustees, fiduciaries, insurers, owners, investors, attorneys, administrators, employees, agents, representatives, shareholders, members, joint employers, predecessors, successors, and assigns, in their individual and official capacities (together with Defendants, collectively the "Releasees") from any and all wage and hour claims under the New York Labor Law and local laws, with the exception of retaliation claims, from the beginning of time through the date of Final Approval.

(B)    **Release of Massachusetts State Wage and Hour Claims by MA FRCP 23 Class Members.**    All MA FRCP 23 Class Members who do not opt out of the Settlement and all Representative Plaintiffs and Opt-in Plaintiffs fully release and discharge Releasees from any and all wage and hour claims under Massachusetts state and local laws, with the exception of retaliation claims, from the beginning of time through the date of Final Approval.

(C)    **Release of Maryland State Wage and Hour Claims by MD FRCP 23 Class Members.**    All MD FRCP 23 Class Members who do not opt out of the Settlement and all Representative Plaintiffs and Opt-in Plaintiffs fully release and discharge Releasees from any and all wage and hour claims under Maryland state and local laws, with the exception of retaliation claims, from the beginning of time through the date of Final Approval.

(D)    **Release of FLSA Claims by FRCP 23 Class Members.**    All FRCP 23 Class Members who endorse their Settlement Checks and all Representative Plaintiffs and Opt-in Plaintiffs fully release and discharge Releasees from all wage and hour claims, with the exception of retaliation claims, under the FLSA. Consequently, if a FRCP 23 Class Member does not endorse their Settlement Check within one hundred twenty (120) calendar days, those individuals will not release any FLSA claims against Releasees.

(E)    **Release by FLSA Class Members.** All FLSA Class Members who endorse their Settlement Checks and all Representative Plaintiffs and Opt-in Plaintiffs fully release and discharge Releasees from all wage and hour claims, with the exception of retaliation claims, under the FLSA and under the state and local laws of Florida, New Jersey, Georgia, and Washington, D.C. Consequently, if an FLSA Class Member does not endorse their Settlement Check within one hundred

twenty (120) calendar days those individuals will not release any FLSA or their respective state and local wage and hour claims against Defendants.

(F)   **Further Release by the Representative Plaintiffs.** As of the date this Agreement is signed by the Representative Plaintiffs, in addition to the releases contained in 3.7(A)-(E) above, and in consideration for the Service Payments received under 3.4(A), each Representative Plaintiff knowingly and voluntarily, on his or her behalf, and on behalf of his or her respective current, former and future heirs, spouses, executors, administrators, agents, and attorneys, fully releases and discharges Releasees from any and all claims from the beginning of time through the date of Final Approval, both known and unknown, which Representative Plaintiffs have or may have against Releasees including, but not limited to, any alleged violation of: Title VII of the Civil Rights Act of 1965; The Civil Rights Act of 1991; Sections 1981 through 1988 of Title 42 of the United States Code; The Equal Pay Act; the Genetic Information Nondiscrimination Act of 2008; The Employee Retirement Income Security Act of 1974; The Immigration Reform and Control Act; The Consolidated Omnibus Budget Reconciliation Act; The Americans with Disabilities Act of 1990; The Fair Credit Reporting Act; The Occupational Safety and Health Act; The Rehabilitation Act; The Federal Worker Adjustment and Retraining Notification Act; The Family and Medical Leave Act; The Federal False Claims Act; The New York Worker Adjustment and Retraining Notification Act; The New York Corrections Law, including Sections 750-755 thereof; The New York State Human Rights Law; The New York Civil Rights Law; The New York City Human Rights Law; The Georgia Fair Employment Practices Act; The "Sex Discrimination in Employment" Chapter of the Labor and Industrial Relations Title of the Georgia Code; Georgia Equal Employment for People with Disabilities Code; The Georgia Employment Security Law; The Maryland Discrimination in Employment Act; The Maryland Civil Rights Act; The Maryland Fair Employment Practices Act; State Government Article § 20-602, Annotated Code of Maryland; The Florida Civil Rights Act; The Florida Whistleblower Act; The Florida Public Whistleblower Law; The Florida Workers' Compensation Law; The Florida Equal Pay Act; The Florida Occupational Safety and Health Act; The Florida Constitution; The District of Columbia Human Rights Act; the District of Columbia Family and Medical Leave Act, the District of Columbia Parental Leave Act; The District of Columbia Accrued Sick and Safe Leave Act; The Massachusetts Fair Employment Practice Act; The Massachusetts Right to Know Law; The Massachusetts Human Rights Law; The Massachusetts Equal Pay Law; The Massachusetts Civil Rights Act, The Massachusetts Equal Rights Act; The Massachusetts Parental Leave Act; The Massachusetts Privacy Statute; The Massachusetts Small Necessities Leave Act; The Massachusetts Equal Opportunity for Disabled Persons Act; and any other federal, state, and/or local law or ordinance. This release includes all claims for all damages arising from any such released claims, including claims for liquidated damages, interest, and attorneys' fees' and costs.

(G)   In the event that the Court denies a Service Payment in its entirety to any of the Representative Plaintiffs, Section 3.7(F) of the Agreement will not apply to that

21

Representative Plaintiff. Any Representative Plaintiff who does not receive a Service Payment will release only claims outlined in Section 3.7(A)-(E) of the Agreement, as applicable.

(H) **Settlement Check Release Language.** The Notice mailed to Class Members will inform them that all wage and hour claims, except retaliation, under the FLSA and the state and local laws of New York, Massachusetts, New Jersey, Maryland, Washington, D.C., Georgia, and Florida will be deemed released upon endorsement and deposit of the check. Participating Claimants shall be issued checks with the following language:

> By endorsing, depositing, cashing, or negotiating this check, I consent to join the class and collective action, *Suarez et al. v. Rosa Mexicano Brands Inc. et al.*, Civil Action No. 16 Civ. 05464 (RLE), and release Defendants and the Releasees from all wage and hour claims, except retaliation, arising under the Fair Labor Standards Act and the state and local laws of New York, Massachusetts, New Jersey, Maryland, Washington, D.C., Georgia, and Florida as described in the Join Stipulation of Settlement and Release in the Litigation.

## 3.8   Miscellaneous

(A) **Payments Related to Trade or Business.** All payments under this Agreement directly result from, and are directly related to, the Defendants' trade or business.

(B) **Cooperation Among the Parties; Further Acts.** The Parties shall cooperate fully with each other and shall use their best efforts to obtain the Court's approval of this Agreement and all of its terms. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

(C) **CAFA:** Defendants will provide to the Claims Administrator a model notice for its use as required by the Class Action Fairness Act ("CAFA"). The Claims Administrator will be fully responsible for preparing and sending any notices required by the CAFA as well as submitting any required declarations or other documents proving compliance with CAFA.

(D) **Confidentiality.** Until preliminary approval motion is filed seeking to approve the settlement, Plaintiffs, Class Counsel, Defendants, and Defendants' Counsel agree that they will not issue or cause to be issued any press release or communication to any third party and will not otherwise communicate to any media or media representative, including, but not limited to, the electronic, print, or digital media or social networking site, information regarding the litigation, the claims asserted therein, the settlement of the litigation, the Confidential

22

Settlement Terms Sheet, and/or this Agreement, or the amount of money paid to resolve the litigation. Notwithstanding the terms of this paragraph, the Parties shall be free to make whatever disclosures they deem necessary and appropriate to their attorneys and financial and tax advisors, or, with respect to the Defendants only, any of their employees, lenders, board members, or advisors, provided those disclosures are truthful. Nothing herein shall prevent Class Counsel from communicating with Class Members.

(E)   **No Assignment.** Class Counsel and Plaintiffs represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

(F)   **Non-Admission of Liability.** By entering into this Agreement, Defendants in no way admit any violation of law or any liability whatsoever to Plaintiffs, individually or collectively, all such liability being expressly denied. Likewise, by entering into this Agreement, Defendants in no way admit to the suitability of this case for class or collective action litigation other than for purposes of settlement. Rather, Defendants enter into this Agreement to avoid further protracted litigation and to resolve and settle all disputes with Plaintiffs. Settlement of the Litigation, negotiation and execution of this Agreement, and all acts performed or documents executed pursuant to or in furtherance of this Agreement or the settlement: (i) are not, shall not be deemed to be, and may not be used as an admission or evidence of any wrongdoing or liability on the part of Defendants or of the truth of any of the factual allegations in any and all Complaints filed in the Lawsuit; and (ii) are not, shall not be deemed to be, and may not be used as an admission or evidence of fault or omission on the part of Defendants in any civil, criminal, administrative or arbitral proceeding. The Parties understand and agree that this Agreement is a settlement document and shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Agreement. Plaintiffs will not be deemed or considered a prevailing party or parties.

(G)   **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

(H)   **Binding Effect.** This Agreement shall be binding upon the Parties, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns.

(I)   **Arm's Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arm's length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement.

23

(J)    **Captions.**  The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

(K)    **Construction.**  The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties.  Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

(L)    **Governing Law.**  This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

(M)    **Continuing Jurisdiction.**  The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

(N)    **Waivers, etc. to Be in Writing.**  No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval.  Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

(O)    **When Agreement Becomes Effective; Counterparts.**  This Agreement shall become effective upon its execution and occurrence of the Effective Date.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Plaintiffs and Defendants had signed the same instrument.

(P)   **Right of Appeal**.  The Parties agree to maintain the right to appeal denial of preliminary and/or final approval of the Settlement.

(Q)   **Representations.** As of the date Class Counsel executes this Agreement, Class Counsel represents that they/it does not know of any claims currently threatened or asserted, or that, as of this date, they/it do not know of any claims that may be forthcoming in the future, against any of the Defendants, except for this Litigation and *Huerta v. West 62 Operating LLC, et al.*, Case No. 16-CV-3876 (JPO) (S.D.N.Y.).

(R)   **Facsimile/Electronic Signatures**.   Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party.  Counsel hereby represent that they are fully authorized to bind the parties they represent to the terms and conditions hereof and that they have authorization to execute this Agreement on their behalf.  This Agreement is valid and binding if signed by the Parties' authorized representatives.   Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

[SIGNATURES ON FOLLOWING PAGE]

25

DATED: _July 25_, 2017

**FITAPELLI & SCHAFFER, LLP**
*On behalf of the Class and Opt-in Plaintiffs,*

*And also on behalf of Fitapelli & Schaffer, LLP as to Sections 3.2, 3.3, 3.4 3.6(K), and 3.8(D), and 3.8(Q) only.*

By: _Brian Schaffer_

BRIAN SCHAFFER, ESQ.
ARMANDO ORTIZ, ESQ.

DATED: _8/4_, 2017

Rosa Mexicano Brands Inc., Defendant

By: _____

DATED: _8/4_, 2017

West 62 Operating LLC., Defendant

By: _____

DATED: _8/4_, 2017

Rosa Mexicano USQ LLC, Defendant

By: _____

DATED: _8/4_, 2017

Fenix Rest. Inc., Defendant

By: _____

DATED: _8/4_, 2017

Rosa Mexicano Murray LLC, Defendant

By: _____

DATED: _8/4_, 2017

Rosa Mexicano Boston, LLC, Defendant

By: _____

26

DATED: _____ 8/4 _____, 2017

Rosa Mexicano Riverside LLC, Defendant
By: _____

DATED: _____ 8/4 _____, 2017

Rosa Mexicano DC, LLC, Defendant
By: _____

DATED: _____ 8/4 _____, 2017

Rosa Mexicano Chevy Chase Maryland, LLC, Defendant
By: _____

DATED: _____ 8/4 _____, 2017

Rosa Mexicano National Harbor LLC, Defendant
By: _____

DATED: _____ 8/4 _____, 2017

Rosa Mexicano Atlanta LLC, Defendant
By: _____

DATED: _____ 8/4 _____, 2017

Rosa Mexicano Miami LLC, Defendant
By: _____

DATED: _____ 8/4 _____, 2017

Rosa Mexicano South Beach, LLC, Defendant
By: _____

27

DATED: Jul 25, 2017 _____, 2017

Edwin Suarez, Plaintiff

_Suarez_
Edwin Suarez (Jul 25, 2017)

DATED: Jul 24, 2017 _____, 2017

Carlos Rivas, Plaintiff

_Carlos Rivas_
Carlos Rivas (Jul 24, 2017)

DATED: _____, 2017

Ester Jiron, Plaintiff

_____

DATED: _____, 2017

Driss Sene, Plaintiff

_____

DATED: _____, 2017

Paula Villegas, Plaintiff

_____

DATED: _____, 2017

Immanuel Thornton, Plaintiff

_____

28

DATED: _____, 2017          Edwin Suarez, Plaintiff

_____

DATED: _____, 2017          Carlos Rivas, Plaintiff

_____

DATED: Jul 24, 2017 _____, 2017    Ester Jiron, Plaintiff

_____
Ester Jiron (Jul 24, 2017)

.

DATED: _____, 2017          Driss Sene, Plaintiff

_____

DATED: _____, 2017          Paula Villegas, Plaintiff

_____

DATED: _____, 2017          Immanuel Thornton, Plaintiff

_____

28

DATED: _____, 2017          Edwin Suarez, Plaintiff

                                      _____

DATED: _____, 2017          Carlos Rivas, Plaintiff

                                      _____

DATED: _____, 2017          Ester Jiron, Plaintiff

                                      _____

            Jul 24, 2017
DATED: _____, 2017          Driss Sene, Plaintiff

                                      _____
                                      Driss Sene (Jul 24, 2017)

DATED: _____, 2017          Paula Villegas, Plaintiff

                                      _____

DATED: _____, 2017          Immanuel Thornton, Plaintiff

                                      _____

28

DATED: _____, 2017        Edwin Suarez, Plaintiff

_____

DATED: _____, 2017        Carlos Rivas, Plaintiff

_____

DATED: _____, 2017        Ester Jiron, Plaintiff

_____

DATED: _____, 2017        Driss Sene, Plaintiff

_____

DATED: __Jul 24, 2017__, 2017        Paula Villegas, Plaintiff

*Paula villegas*
Paula villegas (Jul 24, 2017)

_____

DATED: _____, 2017        Immanuel Thornton, Plaintiff

_____

28

DATED: _____, 2017                    Edwin Suarez, Plaintiff

                                                _____


DATED: _____, 2017                    Carlos Rivas, Plaintiff

                                                _____


DATED: _____, 2017                    Ester Jiron, Plaintiff

                                                _____


DATED: _____, 2017                    Driss Sene, Plaintiff

                                                _____


DATED: _____, 2017                    Paula Villegas, Plaintiff

                                                _____


DATED: Jul 24, 2017 _____, 2017               Immanuel Thornton, Plaintiff

                                                _____
                                                Immanuel Thornton (Jul 24, 2017)

28